A05A1413. OGLES et al. v. E. A. MANN & COMPANY, INC.
A05A1414. OGLES et al. v. GEORGIA DEPARTMENT OF TRANSPORTATION.
(625 SE2d 425)

SMITH, Presiding Judge.
Seeking damages for injuries suffered by Amanda Ogles in a single-car accident on a county road in Jones County, Ogles and others brought this action against numerous defendants, including E. A. Mann & Company, Inc. (Mann) and the Georgia Department of Transportation (DOT). Before the accident, DOT and Jones County had entered into a series of contracts (collectively "the contract") concerning the improvement of a county road known as Griswoldville Road. DOT agreed to provide funding for the improvements, and Jones County agreed to perform the work and labor under DOT's direct supervision. Jones County contracted out the grading, drainage, base, priming, surface treatment, and paving to various subcon-

tractors, a number of whom once were or remain defendants in this action. Jones County was also named as a defendant.[1]

To the extent that the complaint alleged breach of contract, the trial court granted summary judgment to DOT on the ground that Ogles was not a party to or a third-party beneficiary of the contract. The trial court also dismissed claims of negligent inspection and design on the ground that those claims are barred by the Georgia Tort Claims Act (GTCA). In addition, the court dismissed claims of negligent maintenance, concluding that Jones County was responsible for maintaining the road before, during, and after construction. Summary judgment was also granted to Mann. The trial court concluded that Mann's work had been accepted before the accident occurred. In Case No. A05A1413, Ogles appeals from the portion of the order granting summary judgment to Mann. In Case No. A05A1414, Ogles appeals from the portion of the order granting DOT's motions to partially dismiss and for summary judgment. For the reasons that follow, we affirm the rulings of the trial court.

### Case No. A05A1413

1. Ogles contends that summary judgment in favor of Mann was unauthorized, on the ground that factual issues exist for jury determination. The record shows that Jones County subcontracted with A & D Asphalt Company (A & D) for labor and materials for the base and paving of Griswoldville Road. A & D subcontracted application of triple surface treatment of the pavement to Everett Dykes Grassing Company. Everett Dykes in turn entered into an oral contract with Mann's predecessor, Coffee Construction Company (Coffee), under which Coffee was to provide only "the labor and equipment in laying the asphalt and the stone for the triple surface treatment." On October 2, 1992, Coffee completed the treatment. Coffee's last day on the project was October 5, 1992, and it received no requests after that date to "return to complete any repair work on the" project. Coffee sent an invoice to Everett Dykes on November 5, 1992, and at that time "there were no cracks, crevices, or potholes in the pavement." The invoice was paid in its entirety on December 11, 1992, approximately 22 months before Ogles's accident on October 1, 1994.

In May 1993, DOT engineering technician Tim O'Brien wrote a letter to the chairman of the Jones County Commissioners stating that A & D had completed all items in its contract. Jones County made a final inspection of A & D's work in December 1993 and advised A & D

---

[1] We note that Ogles entered into settlement agreements with Jones County and A & D Asphalt, one of the subcontractors named as a defendant.

of certain work that needed to be completed. That work was completed in January 1994. A & D received its final payment for its work in January 1994, approximately nine months before the accident. DOT issued a final acceptance letter for the entire project as of October 4, 1994.

As mentioned above, the trial court granted summary judgment to Mann on the ground that the work done by Coffee had been accepted prior to the accident. The "acceptance doctrine" provides that when

> the work of an independent contractor is completed, turned over to, and accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was negligent in carrying out the contract, at least, if the defect is not hidden but readily observable on reasonable inspection.

(Citations and punctuation omitted.) *Peachtree North Apts. Co. v. Huffman-Wolfe Co.*, 126 Ga. App. 594 (191 SE2d 485) (1972). See also *Derryberry v. Robinson*, 154 Ga. App. 694, 696 (2) (269 SE2d 525) (1980). If the work performed by the contractor does not fall within one of certain exceptions to this rule, "when the work is finished by [the contractor] and accepted by his employer, the liability of the former generally ceases and the employer becomes answerable for damages which may thereafter accrue from the defective conditions of the work." (Citations and punctuation omitted.) Id.

In cases of roadway work, this court has stated "that a road contractor cannot be held responsible for completed work over which it no longer exercises any control. A contractor has no authority, control or responsibility over public ways outside the boundary of its contract provisions." (Citations and punctuation omitted.) *Baker v. Reynolds Trucking Co.*, 181 Ga. App. 242, 243 (351 SE2d 657) (1986). Exceptions to the general rule provide that the contractor "is liable where the work is a nuisance per se, or inherently or intrinsically dangerous" or "where the work done and turned over by [the contractor] is so negligently defective as to be imminently dangerous to third persons." (Citations, punctuation and emphasis omitted.) *Peachtree North*, supra, 126 Ga. App. at 594.

Ogles argues that factual issues exist as to whether Coffee's completed work was inherently dangerous and whether "Coffee's work after completion or acceptance [was] imminently dangerous to third parties." The first exception applies "only where the work performed is *itself* inherently dangerous. [Cits.]" (Emphasis in original.) *Peachtree North*, supra, 126 Ga. App. at 595. As argued by Mann

on appeal, "inherently dangerous" work includes the use of "propane gas, blasting operations, fumigation of premises, spraying from airplanes, the escape of a dangerous animal, emitting sparks from a railway engine and raising an embankment that is unguarded." See *Community Gas Co. v. Williams*, 87 Ga. App. 68, 78-80 (73 SE2d 119) (1952). Ogles has pointed to nothing in the record showing that paving, in and of itself, is an "intrinsically dangerous" activity. Id. at 80.

Nor has Ogles shown that the work as completed by Coffee created an imminent danger to the public. As previously discussed, at the time Coffee's work was tendered as complete, no potholes, crevices, or cracks existed in the pavement. Ogles argues that on the day Coffee completed its work, October 5, 1992, there was a pothole in the pavement. DOT employee Tim O'Brien did agree during his deposition that a pothole was noted on that date but that he was "sure it was" filled in. But any evidence that a pothole was present on October 5 does not refute the undisputed evidence that no potholes were present later, on the date the work was tendered as complete.

O'Brien testified further that the triple surface treatment applied by Coffee was done in accordance with DOT's specifications and that he would not have authorized payment for work not in conformity with those specifications. Although Ogles argues that DOT observed potholes in the pavement in October 1992, November 1992, and April 1993, Ogles's own expert found no "pothole in the vicinity of the accident that [Ogles] could have hit." Under these facts, we cannot agree with Ogles that the condition of the road was imminently dangerous to third parties at the time the work was tendered as complete. This case is not controlled by *Johnson v. E. A. Mann & Co.*, 273 Ga. App. 716 (616 SE2d 98) (2005), cited by Ogles. In that case, we concluded that factual issues existed as to whether the contractor's work had been completed and accepted. The central issue here, however, is whether, at the time of acceptance, Coffee's work constituted a hazard to the public. It did not, and Mann, as Coffee's successor, was entitled to summary judgment.

In an effort to argue the existence of factual issues that would preclude summary judgment, Ogles points to the affidavit testimony of a professional engineer. In relevant part, the engineer stated in the affidavit, "It is . . . my opinion that a contractor/subcontractor in the performance of a public road construction contract, including the activities of applying triple surface treatment, is an inherently dangerous activity." The expert further testified, "I believe that a contractor/subcontractor in the performance of a public road construction contract, who fails to insure that its triple surface treatment work has been properly done and properly completed, creates an inherently dangerous and imminently dangerous condition as to

the . . . public road and to the traveling public." These conclusions, however, are "unsupported by specific facts . . . and cannot be considered as evidence." (Citation, punctuation and footnote omitted.) *Miller v. Miller*, 262 Ga. App. 546, 548 (586 SE2d 36) (2003). See also *Morris v. Gavin, Inc.*, 268 Ga. App. 771, 772-773 (603 SE2d 1) (2004).

### Case No. A05A1414

2. Ogles argues that the trial court erred in dismissing claims for negligent design, inspection, and maintenance.

(a) *Negligent Design.* As a state agency, DOT "is entitled to sovereign immunity except to the extent sovereign immunity has been waived. [Cit.]" *Ga. Military College v. Santamorena*, 237 Ga. App. 58, 59 (1) (a) (514 SE2d 82) (1999). Under the GTCA, OCGA § 50-21-20 et seq., the state has waived sovereign immunity for the torts of state employees and officials, with certain exceptions. OCGA § 50-21-24 sets out 13 exceptions to the waiver of sovereign immunity. Subsection (10) of that Code section provides that the state has no liability for losses resulting from

> [t]he plan or design for construction of or improvement to highways, roads, streets, bridges, or other public works where such plan or design is prepared in substantial compliance with generally accepted engineering or design standards in effect at the time of preparation of the plan or design.

This exception "requires that expert testimony or other competent evidence be submitted to show that the plan or design was not prepared in substantial compliance with generally accepted engineering or design standards [in effect] at the time [the road was constructed]." *Dept. of Transp. v. Brown*, 218 Ga. App. 178, 179 (460 SE2d 812) (1995), aff'd, 267 Ga. 6 (471 SE2d 849) (1996). Ogles has not pointed to any evidence showing that the design of the road was defective or deviated from generally accepted standards. In fact, Ogles's own expert testified that DOT's design met generally accepted design or engineering standards. The trial court therefore did not err in dismissing Ogles's negligent design claim.

(b) *Negligent Inspection.* Ogles's claim of negligent inspection is barred by OCGA § 50-21-24 (8) which provides an exception to state liability with respect to

[i]nspection powers or functions, including failure to make an inspection or making an inadequate or negligent inspection of any property other than property owned by the state to determine whether the property complies with or violates any law, regulation, code, or ordinance or contains a hazard to health or safety.

See *Magueur v. Dept. of Transp.*, 248 Ga. App. 575, 577-578 (547 SE2d 304) (2001).

(c) *Negligent Maintenance.* Ogles argues that the trial court erroneously dismissed her claim for negligent maintenance. In her complaint, she alleged that all the defendants negligently failed to erect traffic cones, warning signs, or other devices to warn motorists on the highway of the presence of a defective condition and that the defect was created "with the acquiescence of" DOT and Jones County, "who are all under the duty to correct said defect(s) and maintain the highway in a safe condition." But OCGA § 32-4-41 (1) provides that "[a] *county* shall plan, designate, improve, manage, control, construct, and *maintain* an adequate county road system and shall have control of and responsibility for all construction, *maintenance*, or other work related to the county road system." (Emphasis supplied.) And under OCGA § 32-2-61 (e) even if DOT enters into a contract

with a state agency or political subdivision for construction of a public road not then, nor to become upon completion of the contract, part of the state highway system or a road within or leading to a state park [that] shall not relieve the agency or the political subdivision of the responsibility for maintaining such public road as such duty is imposed by this Code section and by Code Sections 32-4-41 and 32-4-91.

In addition, OCGA § 32-6-50 (c) (1) provides in relevant part that counties and municipalities must "place and maintain upon the public roads of their respective public road systems such traffic-control devices as are necessary to regulate, warn, or guide traffic." It is undisputed that Griswoldville Road was never a part of the state highway system, and no allegation has been made that it was a road leading into or within a state park. Under the Code sections cited above, DOT was prohibited from maintaining the county road, and Jones County was responsible for that maintenance. The trial court did not err in dismissing Ogles's claim against DOT for negligent maintenance.

3. Ogles contends that DOT's liability arises under the contract between DOT and Jones County. As mentioned above, the trial court concluded that Ogles could not maintain an action based on the

contract, because she was not a party to or third-party beneficiary of the contract. In her appellate brief, Ogles acknowledges the general rule in Georgia "that one cannot be held liable for negligence to a party with whom he is not in contractual privity." See OCGA § 51-1-11; *Miree v. United States*, 242 Ga. 126, 135-136 (3) (249 SE2d 573) (1978). Relying on *Samuelson v. Lord, Aeck & Sergeant*, 205 Ga. App. 568 (423 SE2d 268) (1992), however, she argues that Georgia courts have recognized exceptions to the privity rule when injury to third parties is foreseeable or when a defect is alleged to be imminently or inherently dangerous to third parties.

In *Samuelson*, this court indeed stated that "[i]n appropriate circumstances, a duty of care may be called for by contract and may be required by tort law at the same time, and where this is true [the] plaintiff requires no privity to maintain a tort action." (Citations and punctuation omitted.) Id. at 571-572 (2) (a). OCGA § 51-1-11 (a) similarly provides in relevant part that

> no privity is necessary to support a tort action; but, if the tort results from the violation of a duty which is itself the consequence of a contract, the right of action is confined to the parties and those in privity to that contract, *except in cases where the party would have a right of action for the injury done independently of the contract.*

(Emphasis supplied.)

Ogles has no contract claim. Under the contract here, the county was required to provide all material and "do and perform all the work and labor." The contract required that work and materials be "in strict and entire conformity with the provision of [the] contract and the plans and specifications prepared (or approved) by the state highway engineer or his authorized representative." The contract further recited that "work shall be done in accordance with the laws of the State of Georgia under the direct supervision and to the entire satisfaction of" DOT and that "[t]he decision of the state highway engineer upon any question connected with the execution or fulfillment of this agreement and interpretation of the specifications or upon any failure or delay in the prosecution of the work by the County shall be final and conclusive." This contract, then, imposed a duty of inspection on DOT, which was responsible for ensuring that the work done by the various entities employed by Jones County complied with the terms of the contract. But an action for negligent inspection cannot be maintained against DOT. As discussed in Division 2 (b), DOT is protected by the negligent inspection exception to the waiver of sovereign immunity.

We note that in support of her argument that DOT caused a reasonably foreseeable hazard to the public, Ogles points out that Tony Alston, a technical services engineer in a DOT laboratory, visited the site and noted defects in the prime. Before paving commenced, he advised DOT project engineer Tim O'Brien that paving should not occur until shoulder washes were filled and edges of the prime had dried. O'Brien's deposition testimony, cited on appeal by Ogles, shows that the shoulder washes *were* corrected before paving commenced. Furthermore, as discussed above, Ogles has failed to show that any defect existed constituting an inherent or imminent danger. See Division 1. The trial court did not err in granting summary judgment to DOT.

*Judgments affirmed. Ellington and Adams, JJ., concur.*

DECIDED NOVEMBER 23, 2005 — RECONSIDERATION DENIED DECEMBER 15, 2005 — ▮▮▮▮▮▮

*Burnette & Driggers, G. Samuel Burnette, Buford & Buford, Floyd M. Buford, Jr., Savage, Turner & Pinson, Robert S. Kraeuter, C. Deen Strickland, Earl D. Smith, Jr.*, for Ogles et al.

*Rutherford & Christie, Carrie L. Christie, Angela F. Donaldson*, for E. A. Mann & Company, Inc.

*Thurbert E. Baker, Attorney General, Susan J. Levy, Assistant Attorney General*, for Georgia Department of Transportation.