A06A1214. REIDLING et al. v. CITY OF GAINESVILLE et al.
A06A1215. CITY OF GAINESVILLE v. HALL COUNTY et al.
A06A1216. COMPLETE AUTO PARTS et al. v. CITY OF GAINESVILLE et al.
A06A1217. CITY OF GAINESVILLE v. HALL COUNTY et al.

(634 SE2d 862)

BLACKBURN, Presiding Judge.

Plaintiffs Melissa Reidling, Buncum Lightsey (d/b/a Downtown Properties), and Shane Reidling sued the City of Gainesville, Hall County, and the Georgia Department of Transportation (DOT), alleging that the defendants' road construction project created a flooding nuisance which damaged plaintiffs' property (Case No. A06A1214). In a separate action based on the same set of facts, plaintiffs Complete Auto Parts and Terry Shoaf also sued the same three defendants under an identical nuisance theory (Case No. A06A1216). In both cases, the city filed cross-claims against the county and the DOT for indemnification as to any of plaintiffs' damages for which the city is held liable (Case Nos. A06A1215 and A06A1217). Following discovery, all three defendants moved for summary judgment in both cases. The trial court granted summary judgment to the county and the DOT in both cases, and granted the city partial summary judgment as to the claims of Shane Reidling.

In Case Nos. A06A1214 and A06A1216, all plaintiffs appeal the trial court's summary judgment orders, contending that genuine issues of material fact remain as to whether the DOT is entitled to sovereign immunity, and whether the county is liable for an inverse condemnation of plaintiffs' property. In Case No. A06A1214, plaintiff Shane Reidling contends that genuine issues of material fact remain

[8] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

as to whether he has a legal interest in the damaged property and thus has standing as a proper party. In Case Nos. A06A1215 and A06A1217, the city appeals the trial court's orders granting summary judgment to the county and the DOT as to plaintiffs' claims. Because all of these appeals involve the same set of facts and principles of law, we consolidate them. For reasons set forth below, we reverse the trial court's orders granting summary judgment to the DOT in all cases, affirm the orders granting summary judgment to the county in all cases, and affirm the order granting partial summary judgment to the city as to Shane Reidling's claims in Case No. A06A1214.

"Summary judgment is appropriate when there are no genuine issues of material fact [as to any essential element of a claim] and the movant is entitled to judgment as a matter of law." (Punctuation omitted.) *Britt v. Kelly & Picerne, Inc.*;[1] OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[2]

So construed, the evidence shows that plaintiffs Buncum Lightsey and his daughter, Melissa Reidling, own property, as well as a mobile home park on that property, located at 106 McConnell Drive in the City of Gainesville. Plaintiff Shane Reidling, Melissa's husband, is not an owner of the property, but does own two mobile homes with his wife, both of which sit on the property, and assists her in managing the mobile home park. Immediately to the north, the property is bounded by Flat Creek. Directly across Flat Creek is vacant land with a paved road known as Sterling Drive.[3] At one time the Sterling Drive property was to be developed, but the property was eventually abandoned without any further construction. Plaintiff Terry Shoaf's property and business, Complete Auto Parts, sits adjacent to the western boundary of the Sterling Drive property.

In 1998, construction began immediately to the north of the vacant Sterling Drive property on a roadway extension known as the Pearl Nix Parkway. The parkway construction project involved a combined effort among the city, the county, and the DOT, in which the county would be responsible for funding, acquisition of rights of way, and letting the project to a contractor; the city would be responsible for utility relocations, cost overruns, and taking ownership of the parkway once completed; and the DOT would be responsible for

---

[1] *Britt v. Kelly & Picerne, Inc.*, 258 Ga. App. 843 (575 SE2d 732) (2002).

[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[3] For the purposes of this opinion, the vacant land will hereinafter be referred to as the Sterling Drive property."

design of the parkway plans and oversight of construction. Upon approval by the city and the DOT, the county executed a "lump sum" contract with a general contractor. According to such agreement, the general contractor was paid one lump sum for the entire project, rather than piecemeal for each job, and was responsible for the disposal of any excess fill soil (excavated soil not reused during construction) that accumulated during the project. The specific plans designed by the DOT for this project made no reference as to where, or the manner by which, the excess fill soil was to be disposed.

As construction on the project progressed, excess fill soil began accumulating. Because the DOT design plans did not specify what was to be done under such circumstances, rather than haul the excess fill soil to an offsite location, the contractor asked the DOT supervisor on the project if the excess soil could be deposited in a waste pit that would be placed on the Sterling Drive property. The DOT supervisor relayed this request to a representative of the county who, knowing that the property was owned by the city, relayed the request to the city's director of public works. The request was approved by the city, and eventually at least 50,000 cubic yards of fill soil was deposited in the waste pit on Sterling Drive. As a consequence, the Sterling Drive property, which previously had been on a nearly level plane with Flat Creek, was now raised, with its southern boundary sloping down toward the creek.

On June 27, 2001, nearly two years after the completion of the Pearl Nix Parkway, a severe storm inundated the Gainesville area with rain, causing Flat Creek to overflow its banks. As a result, the property owned by plaintiffs Lightsey and Reidling, as well as the property owned by plaintiff Shoaf, was flooded and incurred significant damage. Plaintiffs alleged that the excess fill soil deposited on the Sterling Drive property changed the topography of that land and, in doing so, destroyed what had been the flood plain for Flat Creek. Consequently, the overflow from Flat Creek was forced onto plaintiffs' respective properties thereby creating a flooding nuisance and damages.

Plaintiffs raised these allegations with the city, the county, and the DOT via ante litem notices, and subsequently filed lawsuits, specifically alleging that the city was liable for damages caused by the creation of a nuisance; that the county was liable because its actions caused an inverse condemnation of plaintiffs' properties; and that the DOT was liable because its plans, which failed to consider what should be done with any excess fill soil, were contrary to generally accepted engineering and design standards, and thus caused the creation of the nuisance. All three defendants filed answers with the city also filing cross-claims against the county and the DOT for indemnification.

After the close of discovery, all three defendants filed motions for summary judgment against both sets of plaintiffs. Following a hearing on defendants' motions, the trial court granted summary judgment to the DOT and the county, ruling that all plaintiffs' claims against the DOT were barred because plaintiffs failed to meet their burden of showing that the DOT waived its sovereign immunity by drafting plans not in accordance with generally accepted engineering and design standards, and that all plaintiffs failed to show that any of the county's actions either created or maintained the alleged nuisance. The trial court also granted summary judgment to the city with regard to the claims of plaintiff Shane Reidling,[4] finding that he lacked any real interest as a party in the damaged property and thus had no standing to sue. These appeals followed.

1. Appellants (in Case Nos. A06A1214, A06A1215, A06A1216, and A06A1217) contend that the trial court erred in finding that no genuine issue of material fact existed as to whether the DOT's plans for the parkway were contrary to generally accepted engineering and design standards. We agree.

As we have previously held, " 'sovereign immunity is a threshold issue.' " *Dept. of Transp. v. Cox.*[5] See *Murray v. Dept. of Transp.*[6] Moreover, sovereign immunity is not an affirmative defense, and thus plaintiffs bear the burden of establishing that a state agency's conduct is excepted from sovereign immunity. See *Bd. of Regents &c. of Ga. v. Daniels;*[7] see also *Dept. of Transp. v. Dupree.*[8] The Georgia Tort Claims Act (OCGA § 50-21-20 et seq.) establishes exceptions to a state agency's sovereign immunity protection, but does so subject to certain limitations as listed in OCGA § 50-21-24. One of these limitations, the design standards exception, provides as follows:

> The state shall have no liability for losses resulting from . . . [t]he plan or design for construction of or improvement to highways, roads, streets, bridges, or other public works where such plan or design is prepared in substantial compliance with generally accepted engineering or design standards in effect at the time of preparation of the plan or design.

---

[4] The city currently has pending motions for summary judgment on the remainder of plaintiffs' claims. In addition, both the county and the DOT have pending motions for summary judgment on the city's cross-claims for indemnification.

[5] *Dept. of Transp. v. Cox*, 246 Ga. App. 221, 222 (540 SE2d 218) (2000).

[6] *Murray v. Dept. of Transp.*, 240 Ga. App. 285 (523 SE2d 367) (1999).

[7] *Bd. of Regents &c. of Ga. v. Daniels*, 264 Ga. 328, 329 (446 SE2d 735) (1994).

[8] *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 671 (1) (570 SE2d 1) (2002).

OCGA § 50-21-24 (10). This exception "requires that expert testimony or other competent evidence be submitted to show that the plan or design was not prepared in substantial compliance with generally accepted engineering or design standards at the time such plan was prepared." (Punctuation omitted.) *Dupree*, supra, 256 Ga. App. at 677 (2); see also *Dept. of Transp. v. Brown*.[9] Sovereign immunity may not apply where the plaintiff can show that the state failed to comply with the applicable standard. Id.

At issue here is whether or not the DOT's design plans for the parkway project were prepared in substantial compliance with generally accepted engineering or design standards given the fact that those plans did not contemplate what was to be done with excess accumulation of fill soil and whether that excess fill soil could be deposited on the Sterling Drive property. In support of their contention that the plans' failure to account for the excess fill soil did not meet accepted design standards, plaintiffs submitted the affidavit of James W. Spotts, Ph.D. In Spotts's affidavit, he states that based on his education and background in the area of soil physics and erosion control plans, the failure of the DOT parkway design plans to consider the impact of depositing the excess fill soil on the Sterling Drive property constituted a failure to comply with accepted engineering and design standards.

In further support of their contention, the plaintiffs cite to the testimony of one DOT witness who conceded that agency roadway design plans contemplate the manner in which excess fill soil should be disposed of when warranted based on estimates that a large amount of excess fill soil will be produced. Moreover, the director of public works for the city also testified as to his opinion that the method for disposal of excess fill soil would normally be considered in the design plans for a roadway project.

The DOT does not dispute that it was its responsibility to draft the parkway design plans or that those plans did not consider or specify what was to be done with any accumulation of excess fill soil. Rather, the DOT argues that because the parkway project was bid and awarded as a lump sum contract, the responsibility for the disposal of any accumulation of excess fill soil was shouldered exclusively by the contractor. While illustrative of the manner and method by which the DOT allocates construction responsibilities for roadway projects to contractors, it does not relieve or address the DOT's responsibility for design. By contrast, there is evidence that the DOT's failure to consider excess fill soil disposal in its design plans

---

[9] *Dept. of Transp. v. Brown*, 218 Ga. App. 178, 179 (1) (460 SE2d 812) (1995).

could authorize a jury to conclude that the DOT did not comply with generally accepted engineering and design standards.

Thus, in light of the plaintiffs' expert's affidavit,[10] as well as other testimony, plaintiffs have presented sufficient evidence to create a question of fact as to whether the DOT's parkway design plans complied with generally accepted engineering and design standards. Accordingly, the trial court erred in granting the DOT's motions for summary judgment (pursuant to OCGA § 50-21-24 (10)).

In addition, neither plaintiffs nor the city challenges the trial court's ruling that sovereign immunity precludes plaintiffs' claims that the DOT either negligently approved the disposal site for the excess fill soil or negligently inspected the site. We agree with the trial court that these claims are barred by OCGA § 50-21-24 (8) and (9) and affirm this ruling. See *Comanche Constr. v. Dept. of Transp.*;[11] *Dept. of Transp. v. Bishop.*[12]

2. Appellants contend that the trial court erred in granting summary judgment to the county on plaintiffs' nuisance claims. We disagree.

> [A]lthough counties are immune from suit generally, certain nuisance suits for injunction and damages [can] be maintained against a county under the constitutional provisions against taking or damaging private property for public purposes. The Constitution provides for a waiver of sovereign immunity where a county creates a nuisance which amounts to an inverse condemnation.

(Citation and punctuation omitted.) *DeKalb County v. Orwig.*[13] See also *Duffield v. DeKalb County.*[14] In order to be held liable for a nuisance, a county must perform "a continuous or regularly repetitious act, or creat[e] a continuous or regularly repetitious condition" that caused the harm. *Orwig*, supra, 261 Ga. at 139 (2). Importantly, however, "[a] county is not liable for a nuisance merely because it approved a construction project." *Morris v. Douglas County Bd. of Health.*[15]

---

[10] At the time it issued its order granting the DOT's motions for summary judgment, there was no evidence in the record before the trial court indicating that plaintiffs' expert was not qualified pursuant to OCGA § 24-9-67.1. Compare *Moran v. Kia Motors America*, 276 Ga. App. 96, 97-98 (1) (622 SE2d 439) (2005).

[11] *Comanche Constr. v. Dept. of Transp.*, 272 Ga. App. 766, 769 (2) (613 SE2d 158) (2005).

[12] *Dept. of Transp. v. Bishop*, 216 Ga. App. 57, 58 (1) (453 SE2d 478) (1994).

[13] *DeKalb County v. Orwig*, 261 Ga. 137, 138 (1) (402 SE2d 513) (1991).

[14] *Duffield v. DeKalb County*, 242 Ga. 432, 433 (1) (249 SE2d 235) (1978).

[15] *Morris v. Douglas County Bd. of Health*, 274 Ga. 898 (1) (561 SE2d 393) (2002).

Here, it is undisputed that the city owns and maintains both the parkway and the Sterling Drive property upon which the excess fill soil was deposited, and that the county exercises no control over either. The county, therefore, cannot be deemed to be performing a continuous act causing plaintiffs harm. See *Morris*, supra, 274 Ga. at 900 (1). See also *Jones v. E. R. Snell Contractor*.[16] Plaintiffs nevertheless contend that the county helped create the nuisance because the independent contractors were hired by the county and because a county official relayed an inquiry from the DOT to the city regarding whether the Sterling Drive property could be used as the site to deposit the excess fill soil. However, while the county did, in fact, bid out the construction contract, it had no role in designing the plans for the contractor to use on the project or in supervising the contractor's work. Furthermore, plaintiffs provided no evidence that the county official performed any action beyond passing on an inquiry between the DOT and the city, and cited no authority that such action constituted oversight of the plan. Thus, there is no genuine issue of fact as to whether or not the county either created or maintained a nuisance that harmed plaintiffs. See *Morris*, supra, 274 Ga. at 898 (1); *Jones*, supra, 333 FSupp.2d at 1351 (III) (C). Accordingly, we affirm the trial court's grant of summary judgment to the county on this issue.

3. In Case No. A06A1214, plaintiff Shane Reidling contends that the trial court erred in finding that he was not a proper plaintiff with standing to file suit for damages caused by the alleged nuisance and in granting partial summary judgment to the city on that basis. We disagree.

OCGA § 9-11-17 (a) provides in part that "[e]very action shall be prosecuted in the name of the real party in interest." The common law restricts the action for nuisance to invasions of interest in the use and enjoyment of land. See *Cox v. DeJarnette*.[17] OCGA § 41-1-4 provides that "[a] private nuisance may injure either a person or property, or both, and for that injury a right of action accrues to the person who is injured or whose property is damaged." In a lawsuit for damages and to enjoin further damage to real property caused by a flooding nuisance, "the real party in interest is the person or persons who own, lease or have a legal interest in the property." *Equitable Life Assurance Society v. Tinsley Mill Village*.[18] See also *Nichols v. Main Street*

---

[16] *Jones v. E. R. Snell Contractor*, 333 FSupp.2d 1344, 1351 (III) (C) (N.D. Ga. 2004).

[17] *Cox v. DeJarnette*, 104 Ga. App. 664, 675 (2) (123 SE2d 16) (1961).

[18] *Equitable Life Assurance Society v. Tinsley Mill Village*, 249 Ga. 769, 771 (2) (294 SE2 495) (1982).

Homes.[19]

Plaintiff Shane Reidling does not dispute the fact that he is not an owner of his wife's and father-in-law's real property which was damaged. He also concedes that the two mobile homes in which he does share an ownership interest with his wife were not damaged in the flood that damaged his wife's real property. Nevertheless, he contends that he is a real party in interest because according to *Stokes v. Stokes*,[20] he shares an equitable interest in the mobile home park on the property based on the improvements and repairs he has made to it during the time he and his wife have been married.

This argument, however, has no merit as it "overlooks the principle that no property rights are created in the assets of the marriage while the parties are still married." *Miller v. Fulton County*.[21] Indeed, the *Stokes* decision itself holds that a court's ability to determine the equitable interests of spouses in real property is based on the ancillary jurisdiction it specifically maintains in divorce actions. See *Stokes*, supra, 246 Ga. at 771 (3). Accordingly, the trial court properly granted partial summary judgment to the city on the question of Shane Reidling's standing.

*Judgments affirmed in part and reversed in part. Mikell and Adams, JJ., concur.*

DECIDED JULY 26, 2006 — ▮▮▮▮▮▮▮

*Russell & Mingledorff, Currie M. Mingledorff II, Larry E. Stewart*, for Reidling et al. and Complete Auto Parts et al.

*Thurbert E. Baker, Attorney General, Susan J. Levy, Assistant Attorney General, Freeman, Mathis & Gary, T. Bart Gary, Donald J. Grate, Levy & Pruett, Henry L. Pruett, Hall, Booth, Smith & Slover, Phillip E. Friduss, R. Chris Irwin*, for City of Gainesville et al., Hall County et al., and Department of Transportation.

---

[19] *Nichols v. Main Street Homes*, 244 Ga. App. 591, 595 (3) (536 SE2d 278) (2000).
[20] *Stokes v. Stokes*, 246 Ga. 765, 771 (3) (273 SE2d 169) (1980).
[21] *Miller v. Fulton County*, 258 Ga. 882, 883 (1) (375 SE2d 864) (1989).