A06A1967. WELCH et al. v. GEORGIA DEPARTMENT OF
TRANSPORTATION.
(642 SE2d 913)

MIKELL, Judge.

Addie D. Welch was killed when the pickup truck she was driving collided with a dump truck at the intersection of East Courtland Avenue (Georgia Highway 333) and North Washington Street (Georgia Highway 76) in Quitman. Claiming that trees and shrubs on the property adjacent to the intersection were negligently maintained and obstructed Welch's line of sight, the executor of her estate and her surviving children and grandchildren sued the Georgia Department of Transportation ("DOT") for her wrongful death.[1] DOT subsequently moved for summary judgment, arguing that OCGA § 32-2-2 precluded plaintiffs' claim, or in the alternative, that plaintiffs presented no evidence that Welch's line of sight was obstructed. The trial court granted DOT's motion without specifying the grounds for its ruling. For reasons that follow, we affirm.

Summary judgment is proper when the moving party shows that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law.[2] We apply a de novo standard of review to an appeal from a grant or denial of summary judgment and construe the evidence most favorably to the nonmovant.[3] So construed, the evidence shows that at approximately 11:55 a.m. on September 10, 2003, Welch was traveling east on East Courtland Avenue, approaching its intersection with North Washington Street. She approached the stop sign and then proceeded through the intersection where her vehicle was struck on the driver side by a loaded dump truck driven by Leroy Head, an employee of GEM Trucking. Head testified that a witness to the accident told him that Welch was talking to her passenger and did not stop at the stop sign. Welch died from her injuries.

Officer Robert Denton of the City of Quitman Police Department responded to the accident. He recalled that witnesses told him that Welch stopped at the stop sign and then proceeded across the intersection. Denton opined that the overgrown bushes on the northwest corner of the intersection contributed to the accident and further acknowledged that he personally has experienced visibility problems at the intersection. Chief Investigator Roy Bamburg of the Brooks County Sheriff's Department investigated the accident. He testified that the house on the northwest corner of the intersection had been

---

[1] Plaintiffs also sued the driver of the truck and his employer, the owners of the adjacent property, and the City of Quitman, but settled with them.

[2] See *Reidling v. City of Gainesville*, 280 Ga. App. 698, 699 (634 SE2d 862) (2006).

[3] See id.

vacant for some time and that overgrown shrubs on the property and a "curvature" in the road combine to make the intersection dangerous.

According to DOT employees, in the days and weeks following the accident, the City of Quitman asked DOT to assist in a cleanup of the intersection. DOT performed maintenance and cleaned the area, including hiring a tree service to remove three trees.

Appellants' engineering expert, Scott Bladen, opined that Welch's line of sight was obstructed by overgrown shrubs and trees on the northwest corner of the intersection; that the overgrowth extended two feet into the DOT right-of-way; and that DOT was responsible for maintaining the line of sight pursuant to OCGA § 32-4-93. After reviewing the depositions of several DOT employees, Bladen concluded that the right-of-way began at the edge of the vacant property and extended 100 feet to the highway. Bladen explained that the American Association of State Highway and Transportation Officials' guidelines for that intersection require a line of sight of 430 feet. Because of the overgrown vegetation, Welch's line of sight was between 143 and 277 feet.

The record further reflects that several accidents have occurred at the intersection, including one in 1995 involving Mary Catherine Williford, who testified that the overgrown vegetation obstructed her view, and another in 2000 that resulted in the death of Susan Fenno, where the same overgrowth was cited as a contributing factor.

1. Appellants contend that the trial court erred in finding DOT immune from liability for failing to maintain the overgrown area. We disagree.

Pursuant to OCGA § 32-2-2, DOT has the general responsibility to design, manage and improve the state highway system.[4] But, where state highways are within city limits, the DOT is required to provide only substantial maintenance and operation.[5] These include things such as reconstruction and resurfacing, reconstruction of bridges, erection and maintenance of official department signs, painting of striping and pavement delineators and other major maintenance activities.[6] Specifically, OCGA § 32-2-2 (a) (1) provides that

> [t]he powers and duties of the department, unless otherwise expressly limited by law, shall include but not be limited to the following: (1) The department shall plan, designate, improve, manage, control, construct, and maintain a state

---

[4] OCGA § 32-2-2 (a).

[5] Id. at (a) (1).

[6] Id.

highway system and shall have control of and responsibility for all construction, maintenance, or any other work upon the state highway system and all other work which may be designated to be done by the department by this title or any other law. However, on those portions of the state highway system lying within the corporate limits of any municipality, the department shall be required to provide only substantial maintenance activities and operations, including but not limited to reconstruction and major resurfacing, reconstruction of bridges, erection and maintenance of official department signs, painting of striping and pavement delineators, furnishing of guardrails and bridge rails, and other major maintenance activities.

Though Georgia Highway 333 is a state highway, there is no dispute that the subject intersection lies within the corporate limits of the City of Quitman. Accordingly, DOT is required only to provide substantial maintenance activities and operations.

Appellants insist that maintenance of the overgrown shrubbery on the northwest corner of the intersection constitutes a "substantial" or "other major" maintenance activity as defined by the statute. We disagree. The expansive scope urged by appellants conflicts with the principle of ejusdem generis, which provides that

when a statute or document enumerates by name several particular things, and concludes with a general term of enlargement, this latter term is to be construed as being ejusdem generis[, i.e., of the same kind or class,] with the things specifically named, unless, of course, there is something to show that a wider sense was intended.[7]

The maintenance of shrubbery and vegetation is not included in the definition of "substantial maintenance activities and operations," nor is it analogous to major maintenance activities such as the resurfacing of roads, reconstruction of bridges, or furnishing of guardrails. Accordingly, OCGA § 32-2-2 did not impose a duty on DOT to maintain the shrubbery.

Appellants further argue that the application of OCGA § 32-2-2 to relieve DOT from liability for maintaining the intersection produces an absurd result. They point out that OCGA § 32-4-93 similarly relieves the City of Quitman from liability for maintaining the

[7] (Citations, punctuation and footnote omitted.) *Hicks v. Florida State Bd. of Admin.*, 265 Ga. App. 545, 548 (1) (594 SE2d 745) (2004).

intersection. Accordingly, OCGA §§ 32-2-2 and 32-4-93 conflict, leaving no one responsible for maintaining the intersection. On the contrary, OCGA § 32-4-93 acts in concert with OCGA § 32-2-2 by relieving a municipality of liability when DOT has provided the substantial maintenance activities on a state highway running through that municipality.

Alternatively, appellants contend that DOT is responsible for failing to inspect its right-of-way under OCGA § 50-21-24 (8), which provides that

> [t]he state shall have no liability for losses resulting from: . . . [i]nspection powers or functions, including failure to make an inspection or making an inadequate or negligent inspection of any property other than property owned by the state to determine whether the property complies with or violates any law, regulation, code, or ordinance or contains a hazard to health or safety.

In order to prevail on this claim, appellants must show that the vegetation extended into DOT's right-of-way. DOT argues that the overgrowth was on private property and that there is no evidence, save Bladen's unsupported opinion, that the vegetation extended into the right-of-way.

> A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions, and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[8]

Juanita Hullett, DOT's maintenance assistant for the Moultrie area, including the City of Quitman, did not know the extent of DOT's right-of-way at the intersection and acknowledged that any prior statements to the contrary were pure speculation. Sonja Thompson, Hullett's supervisor, also did not know the extent of the right-of-way and testified that DOT attempted to estimate its location after the accident. She explained as follows: "[T]here's no definite way [to

---

[8] (Punctuation and footnote omitted.) *Hamblin v. City of Albany*, 272 Ga. App. 246, 248 (612 SE2d 69) (2005).

determine the extent of the right-of-way]. . . . [I]f we ever needed something definite, we would have to go to the courthouse and research deed or get our surveyors to come in and actually tell us what the right-of-way through there is because these are not concrete." As noted previously, Bladen based his opinion on this testimony, none of which established the location of the right-of-way or that the vegetation extended into it. Accordingly, appellants' attempts to use OCGA § 50-21-24 (8) to impose liability on DOT for failing to inspect its right-of-way fails.

For the foregoing reasons, we affirm the trial court's grant of summary judgment to DOT.

2. In light of our ruling in Division 1, appellants' remaining enumerations are moot.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 7, 2007.

*Mike S. Bennett, Sr., Jim T. Bennett*, for appellants.
*Thurbert E. Baker, Attorney General, G. Michael Banick, Assistant Attorney General*, for appellee.