A11A0665. SADLER et al. v. DEPARTMENT OF
TRANSPORTATION OF THE STATE OF GEORGIA.
A11A0666. DALEY v. DEPARTMENT OF TRANSPORTATION
OF THE STATE OF GEORGIA.
A11A0667. DALEY et al. v. DEPARTMENT OF
TRANSPORTATION OF THE STATE OF GEORGIA.
A11A0668. HAYES et al. v. DEPARTMENT OF
TRANSPORTATION OF THE STATE OF GEORGIA.
(716 SE2d 639)

DILLARD, Judge.
This appeal follows the trial court's dismissal of four complaints filed against the Georgia Department of Transportation ("GDOT") following a traffic accident in which Connie Sadler and Ana Pellerin were tragically killed and in which Peggy Sadler Daley and Dacia Mitchell were seriously injured (collectively "the plaintiffs").[1] The trial court granted GDOT's motion to dismiss based upon the

---

[1] Because the facts and arguments are the same in each case, we have consolidated the

plaintiffs' failure to show a waiver of sovereign immunity. For the reasons noted infra, we affirm.

The record shows that in 2005, Peggy Sadler Daley was driving home with three family members in her vehicle: her sister, Connie, in the passenger seat; her six-month-old daughter, Ana, restrained in the rear passenger-side seat; and her three-year-old daughter, Dacia, restrained in the rear driver-side seat. In order to reach her home, Daley had to pass through the intersection of Cassidy Road and the North Thomasville Highway Bypass/Georgia State Highway 38 in Thomas County. The two lanes of Cassidy Road cross over a four-lane bypass, which is divided by a median and turn lanes. The bypass is flanked by stop-signs on either side of Cassidy Road and white, painted stop-bars within the median.

Daley testified below that on the afternoon in question, she stopped at the stop-sign on Cassidy Road before entering the median of the bypass, and that once she entered the median, she stopped at the painted stop-bar to assess the amount of oncoming traffic before proceeding across the remainder of the bypass.[2] According to Daley, a white car in a left-hand turn lane partially blocked her view of oncoming traffic while she was stopped; nevertheless, Daley's sister helped her to determine when it was safe to proceed across the remainder of the bypass. Unfortunately, as Daley exited the median, her vehicle was struck on the passenger side by an oncoming pickup truck.[3] As a result of this collision, Daley's sister and younger daughter were tragically killed, and Daley and her older daughter were seriously injured.

Thereafter, the plaintiffs filed suit against GDOT,[4] alleging that GDOT (1) was negligent in its analysis of the intersection and bypass operations; (2) negligently managed, designed, and maintained the intersection; (3) failed to comply with generally accepted design

---

cases for appeal.

[2] A witness to the accident testified that he observed Daley's vehicle the entire time it proceeded through the intersection and that it did not stop or slow down. Daley, however, testified that she had crossed the intersection "millions of times" and that it was her habit to stop in the median before fully crossing. The trial court found that "[r]egardless of whether Ms. Daley stopped in the median cross-over on the day of the Accident, . . . [she] knew that she had room to stop in the median cross-over."

[3] Daley claimed not to have seen the pickup truck until it was right upon her vehicle.

[4] In Case No. A11A0665, Anna Marie Sadler, as administrator of the estate, and Larry Moore, as next friend of Christopher Moore, filed suit on behalf of Connie Sadler, who is deceased. In Case No. A11A0666, Peggy Sadler Daley (formerly known as Peggy Sadler) filed suit for her own injuries. In Case No. A11A0667, Peggy Sadler Daley filed suit on behalf of her daughter, Dacia Mitchell. And in Case No. A11A0668, H. Daniel Hayes, Jr., as administrator of the estate, and Peggy Sadler Daley, as a surviving parent, filed suit on behalf of Ana Danielle Pellerin, who is deceased. The parties stipulated from the outset of this litigation that discovery would apply to all companion cases but that the respective trials would not be consolidated.

standards and failed to provide proper traffic-control devices and signals at the intersection; and (4) failed to provide supplemental traffic devices in the median. In response, GDOT asserted that it was immune to the plaintiffs' claims under the doctrine of sovereign immunity and moved to dismiss the complaints.[5] The trial court granted GDOT's motion to dismiss, concluding that the plaintiffs had not shown a waiver of sovereign immunity. This appeal by the plaintiffs follows.

At the outset, we note that "sovereign immunity is a threshold issue" for the trial court's consideration.[6] The Georgia Tort Claims Act[7] sets forth exceptions to a state agency's sovereign immunity,[8] which are subject to certain limitations;[9] and a plaintiff bears the burden "of establishing that a state agency's conduct is excepted from sovereign immunity."[10] Moreover, we review a trial court's grant of a motion to dismiss on sovereign-immunity grounds de novo, bearing in mind that a motion to dismiss may be granted only when a plaintiff "would not be entitled to relief under any set of facts that could be proven in support of its claim."[11] Nevertheless, "[w]hen the trial court determines a jurisdictional issue based upon conflicting factual issues, on appeal, the court's finding on a factual issue will be sustained if there is evidence which authorizes the finding."[12] With these guiding principles in mind, we turn now to the plaintiffs' enumerations of error.

1. The plaintiffs first argue that the trial court erred in finding that the design-standards exception applied and that, accordingly, GDOT's sovereign immunity had not been waived. We disagree.

The design-standards exception shields the State and its agen-

---

[5] In the alternative, GDOT also filed a motion for summary judgment and motions to exclude the plaintiffs' expert testimony; however, the trial court did not address these motions in its order.

[6] *Reidling v. City of Gainesville*, 280 Ga. App. 698, 701 (1) (634 SE2d 862) (2006) (citation and punctuation omitted). *See generally Dep't of Transp. v. Dupree*, 256 Ga. App. 668, 670-76 (1) (a)-(c) (570 SE2d 1) (2002) (providing an explanation of how and when a trial court considers the question of sovereign immunity).

[7] OCGA § 50-21-20 et seq.

[8] *Id.*; *see also Reidling*, 280 Ga. App. at 701 (1).

[9] *See* OCGA § 50-21-24; *see also Reidling*, 280 Ga. App. at 701 (1).

[10] *Reidling*, 280 Ga. App. at 701 (1) (citation omitted).

[11] *Lewis v. Dep't of Human Res.*, 255 Ga. App. 805, 806-07 (567 SE2d 65) (2002) (punctuation omitted).

[12] *Dupree*, 256 Ga. App. at 676 (1) (c) (citation and punctuation omitted); *see also Steele v. Ga. Dep't of Transp.*, 271 Ga. App. 374, 376 (609 SE2d 715) (2005) ("[The plaintiff] had the burden of proof to establish the waiver [of sovereign immunity], and the trial court's pre-trial determination of factual issues necessary to decide the . . . motion is tested on appeal under the any evidence rule." (citation omitted)).

cies from liability for losses that result from

> [t]he plan or design for construction of or improvement to highways, roads, streets, bridges, or other public works [when] such plan or design is prepared in substantial compliance with generally accepted engineering or design standards in effect at the time of preparation of the plan or design.[13]

Thus, sovereign immunity does not exempt the State from liability when a plaintiff can show that the State failed to comply with the applicable standard of care.[14] To do this, a plaintiff must present "expert testimony or other competent evidence . . . to show that the plan or design was not prepared in substantial compliance with generally accepted engineering or design standards at the time such plan was prepared."[15]

In the case sub judice, the plaintiffs presented deposition testimony of a consulting engineer, Herman Hill, who posited, in pertinent part, that GDOT was negligent in failing to place adequate and necessary markings and signs in the intersection's median.[16] GDOT then responded to this testimony by including with its motion to dismiss the affidavit of a professional engineer who averred that (1) the Cassidy Road/Thomasville Bypass intersection fully complied with the applicable generally accepted engineering and design guidelines as set forth in the "Manual of Uniform Traffic Control Devices" (MUTCD), and (2) the plaintiffs' expert opinions were unsupported by industry practice or were otherwise unreliable.

Based on "the evidence and the written and oral arguments of the parties," the trial court found that the plans and designs for the intersection, which were completed in 1998, complied with the engineering and design standards that applied at that time—specifically, that the design complied with the policy suggestions in the 1984 edition of "A Policy on Geometric Design of Highways and Streets" and the 1988 edition of MUTCD.[17] And based on our review of the record, we agree with the trial court's conclusion.

---

[13] OCGA § 50-21-24 (10); see also Reidling, 280 Ga. App. at 701 (1).

[14] See, e.g., Reidling, 280 Ga. App. at 702 (1).

[15] Id. (citation and punctuation omitted).

[16] See Dep't of Transp. v. Mikell, 229 Ga. App. 54, 56 (1) (a) (493 SE2d 219) (1997) ("Because the plaintiffs are challenging the layout of the intersection itself and the choice of traffic control devices which control it, they are asserting that the intersection is negligently engineered and designed.").

[17] Cf. Daniels v. Dep't of Transp., 222 Ga. App. 237, 239 (2) (474 SE2d 26) (1996) (physical precedent only) ("[I]f the DOT is exempt from liability for its initial design of a highway under the Georgia Tort Claims Act, it would make little sense to permit liability for failing to change that initial design.").

Specifically, plaintiffs' expert (Hill) testified that if the median was 30 feet or greater in width, the MUTCD would *require* the placement of a stop-sign in the median. But according to GDOT's expert, the 1988 MUTCD specifies that stop-signs or yield-signs *may* be placed inside a median if the median is more than 30 feet wide. And the 1988 MUTCD further defines "may" as a "permissive condition" with "[n]o requirement for design or application . . . intended."[18]

Moreover, although Hill's testimony suggested various definitions of and methods for measuring what constitutes the width of a median, he never appeared to reach a definitive conclusion on this important factual issue,[19] and even conceded that the median at issue could be considered less than 30 feet wide under one such definition.[20] And GDOT's expert averred that the width of the median was in fact less than 30 feet wide. Finally, the testimony of the plaintiffs' other expert, Robert Stammer, also appeared to agree with the conclusion that the width of the subject median was less than 30 feet.[21]

---

[18] We note that, aside from a copy of the MUTCD's definition for "may," the record before us is bereft of any other exhibit reflecting the MUTCD's written requirements and policies. It is, of course, "well established that the burden is on the party alleging error to show it by the record." *Bennett v. Executive Benefits, Inc.*, 210 Ga. App. 429, 429 (436 SE2d 544) (1993) (citation omitted). And when the proof necessary for determination of the issues on appeal is omitted from the record, "an appellate court must assume that the judgment below was correct and affirm." *Id.* (citation omitted).

[19] *Compare Mikell*, 229 Ga. App. at 58 (1) (a) (holding that plaintiffs could not rely solely on MUTCD "to establish the standard of care [when] permissive and advisory instructions are involved" and must "establish the standard of care and the violation thereof by expert testimony"), *and Reidling*, 280 Ga. App. at 702 (1) (plaintiff submitted expert affidavit that said, "based on [the expert's] education and background," that GDOT's failure "to consider the impact of depositing . . . excess fill soil [on property] . . . constituted a failure to comply with accepted engineering and design standards"), *with Ogles v. E.A. Mann & Co.*, 277 Ga. App. 22, 26 (2) (a) (625 SE2d 425) (2005) (affirming dismissal when "[plaintiff's] own expert testified that DOT's design met generally accepted design or engineering standards").

[20] To the extent that Hill provided varying definitions of (and methods of calculating) the width of a median, and to the extent that one or more of these methods could have resulted in the measurement of a median greater than 30 feet wide, the plaintiffs failed to include with the appellate record the relevant exhibits from this portion of Hill's testimony. *See supra* note 18 and accompanying citations. The plaintiff has the burden of presenting competent evidence to establish a waiver of sovereign immunity. *See Ogles*, 277 Ga. App. at 26 (2) (a) ("[The design] exception requires that expert testimony or other competent evidence be submitted to show that the plan or design was not prepared in substantial compliance with generally accepted engineering or design standards. . . ." (citation and punctuation omitted)). *Cf. Daniels*, 222 Ga. App. at 238 (1) (physical precedent only) (holding that plaintiff failed to present evidence admissible for consideration of GDOT's negligence when plaintiff's expert relied upon guidelines adopted *after* relevant design plans were finalized). *See generally Donaldson v. Dep't of Transp.*, 236 Ga. App. 411, 412-16 (1) (b) (511 SE2d 210) (1999) (discussing admissibility and use of MUTCD when establishing standard of care).

[21] We further note that plaintiffs did not include the full deposition of this expert in the appellate record.

After considering the foregoing evidence, the trial court found that the median was less than 30 feet wide and, thus, that no additional signage was required. The trial court further found that even if the median had been greater than 30 feet wide, the placement of additional signs would have been permissive, not mandatory, under the MUTCD.[22] Additionally, as further discussed in Division 2, infra, the trial court found that GDOT was not negligent in failing to place a traffic signal at the intersection.[23] As such, the trial court properly held that the plaintiffs failed to establish noncompliance with accepted design and engineering practices. And for all of the reasons outlined supra, we agree with the trial court's conclusion that the plaintiffs failed to meet their burden of showing that a waiver of sovereign immunity was authorized by the record evidence.[24]

2. The plaintiffs next contend that the trial court erred in finding that the permit exception applied and that, accordingly, GDOT's sovereign immunity had not been waived. We disagree.

The permit exception creates an exception to the waiver of sovereign immunity as to "[l]icensing powers or functions, including, but not limited to, the issuance, denial, suspension, or revocation of or the failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization."[25] And while GDOT issues permits to local governments for the installation of traffic signals, the MUTCD requires a traffic engineering study to evaluate, prior to any determination to add a traffic signal, the need

---

[22] See Mikell, 229 Ga. App. at 58 (1) (a) ("The exercise of . . . discretion involves the use of professional engineering judgment, and for that reason, it was incumbent upon the plaintiffs to present expert engineering testimony on this issue in order to establish the applicable standard of care and a breach thereof.").

[23] See Dupree, 256 Ga. App. at 677 (2) ("Where and whether to install traffic lights were design decisions." (citation and punctuation omitted)).

[24] See Steele, 271 Ga. App. at 376 ("[The plaintiff] had the burden of proof to establish the waiver [of sovereign immunity], and the trial court's pre-trial determination of factual issues necessary to decide the . . . motion is tested on appeal under the any evidence rule." (citation omitted)). Compare Dep't of Transp. v. Brown, 267 Ga. 6, 8 (2) (471 SE2d 849) (1996) (holding, in case in which MUTCD did not contain generally accepted design standards on the relevant question, that expert testimony "that some of DOT's actions and failures to act . . . violated generally accepted engineering standards" was sufficient to show waiver of sovereign immunity). To the extent that the plaintiffs point to the deposition of Frank Danchez, a former chief engineer for GDOT, as proof that the median at issue was more than 30 feet wide, it is unclear from his testimony whether he was referring to the median at issue or a median for Georgia 400, to which he repeatedly made reference. Additionally, Danchez's testimony contradicted a suggestion by plaintiffs' expert Hill that the subject median should be considered a separate intersection, demanding additional signage. Finally, Danchez testified that GDOT follows MUTCD to determine when to place signs, that he had not analyzed the subject intersection to determine whether additional signs should have been placed, and that he did not recall being involved with the design of the subject intersection.

[25] OCGA § 50-21-24 (9); see also Dupree, 256 Ga. App. at 679 (3).

for the issuance of a signal permit.[26] In this respect, the MUTCD contains "warrants" that indicate when conditions in an area present the need for a traffic signal.[27]

And here, the plaintiffs' expert (Hill) opined that GDOT was negligent in (1) failing to place a traffic signal at the Cassidy Road intersection and (2) failing to respond to a history of accidents at the intersection, which should have, in his opinion, compelled more than the minimum signal requirements. GDOT, however, presented evidence that when the Cassidy Road intersection opened, there were no warrants for the installation of a traffic signal. Additionally, after the intersection opened, two traffic studies were conducted, neither of which presented warrants indicating the need for a traffic signal. As such, consistent with the MUTCD, GDOT did not issue a permit for the installation of a traffic signal.

The trial court then found that because there was no evidence that the Cassidy Road intersection warranted a signal, and because GDOT had no duty to upgrade the intersection in response to what Hill claimed was a history of accidents, the permitting exception applied. And we conclude that the trial court's finding in this regard was authorized by the evidence, which shows that the plaintiffs failed to establish a waiver of sovereign immunity as to this claim as well.[28]

Accordingly, for all the foregoing reasons, we affirm the trial court's grant of GDOT's motion to dismiss based on sovereign immunity.

*Judgments affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 8, 2011 — 

*Savage, Turner, Pinson & Karsman, Brent J. Savage, Christopher D. Britt, Jack J. Helms*, for appellants.

*Thurbert E. Baker, Attorney General, Robert C. Edwards, Claude M. Sitton, Assistant Attorneys General*, for appellee.

---

[26] *See Dupree*, 256 Ga. App. at 669.

[27] *See id.* (explaining that warrants "describe conditions indicating the need for a traffic signal").

[28] *See id.* at 679 (3) ("We agree that the permit exception prevented sovereign immunity from being waived as to negligence in failing to issue the permit for a traffic light after completion of [a widening project]."); *see also Daniels*, 222 Ga. App. at 239 (2) (physical precedent only) ("[I]f the DOT is exempt from liability for its initial design of a highway under the Georgia Tort Claims Act, it would make little sense to permit liability for failing to change that initial design.").