**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 13, 2017**

# In the Court of Appeals of Georgia

A16A1979. PETREE v. STATE OF GEORGIA DEPARTMENT OF
    TRANSPORTATION, et al.

BRANCH, Judge.

After her property suffered damage from the repeated flooding of a drainage ditch located at the back of her residential lot, Dixie Petree sued the Georgia Department of Transportation (the "DOT") and Macon-Bibb County (the "County") in Bibb County Superior Court. Petree's complaint asserted claims for negligence, trespass, and nuisance, and she alleged that the DOT and/or the County were responsible for the conditions that resulted in the flooding of her property. Petree now appeals from the trial court's order dismissing her complaint, asserting that the trial court acted improperly when, over Petree's objection, it considered evidence other than the pleadings to determine whether Petree's complaint stated a claim against the

County. Petree further contends that the trial court erred in finding that her claims for ordinary negligence were subject to the expert affidavit requirement of OCGA § 9-11-9.1, and that the DOT was entitled to sovereign immunity from such a claim. Finally, Petree argues that the court erred when it found that her claims for nuisance and trespass were barred by the applicable statute of limitation and/or her failure to provide the DOT with a timely ante litem notice. For reasons explained more fully below, we affirm the trial court's dismissal of Petree's claims against the DOT, reverse the order of dismissal as to the County, and remand the case for further proceedings consistent with this opinion.

We review the grant of any motion to dismiss de novo, applying the rule that a motion to dismiss "should not be granted unless the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof." *Babalola v. HSBC Bank, USA, N. A.*, 324 Ga. App. 750, 752 (2) (751 SE2d 545) (2013) (citation and punctuation omitted). See also *Sadler v. Dept. of Transp.*, 311 Ga. App. 601, 603 (716 SE2d 639) (2011). And when reviewing a trial court's determination that a pleading fails to state a claim upon which relief can be granted, this Court is cognizant of the fact that "the Georgia Civil Practice Act requires only notice pleading and, under the Act, pleadings are to

2

be construed liberally and reasonably to achieve substantial justice consistent with the statutory requirements of the Act." *Campbell v. Ailion*, 338 Ga. App. 382, 384-385 (790 SE2d 68) (2016) (citation and punctuation omitted). Thus, "[we] treat[] all material allegations set forth in the complaint as true, treat[ ] all denials set forth in the answer as false, and resolv[e] any doubts in favor of the plaintiff." Id. at 383 (citations omitted).

Viewed in the light most favorable to Petree, the record shows that Petree filed suit in May 2014 and alleged that acting individually and jointly, the defendants had "caused, maintained, and allowed to exist a drainage ditch adjacent to, and which has been allowed to become a part of, [Petree's] property"; had negligently planned, designed, constructed, and maintained the ditch; and had "been negligent in allowing the drainage ditch to exist in its past and present state; "had caus[ed] construction in adjacent areas which worsened the condition of the drainage ditch"; and "[had] fail[ed] and refus[ed] to make necessary improvements to prevent damage caused by the drainage ditch." Petree further alleged that her property had been and continued to be damaged by the discharge of water from the drainage ditch, and that such damage had begun in 2000. Finally, Petree asserted that despite having taken measures in an effort to mitigate these damages, the discharge of water "continues to

occur whenever any significant amount of rain falls in or about the vicinity." Attached to the complaint were copies of the ante litem notices that Petree had provided to the State and the County on July 30, 2013.

Both the DOT and the County filed answers in which they asserted that the complaint failed to state a claim for relief and that Petree's claims against them were barred by the applicable statute of limitation and the doctrine of sovereign immunity. The DOT also asserted that Petree's claims against it were barred by Petree's failure to provide a timely ante litem notice. Additionally, the DOT argued that to the extent Petree's negligence claim was premised on an assertion that the defendants had been negligent in the planning, design, or construction of the ditch, that claim was barred by Petree's failure to attach an expert affidavit, as required by OCGA § 9-11-9.1. Contemporaneously with the filing of its answer, the DOT also filed a motion to dismiss based on the affirmative defenses asserted in its answer. The County thereafter filed a motion to dismiss based on its asserted defenses.

In support of its motion to dismiss, the DOT filed a brief to which it attached 58 pages of exhibits showing that Petree first became aware of an increased water flow in the ditch by no later than 2001, that she began corresponding with the County regarding the increased flow at that time, and that flooding from the ditch began

4

causing erosion to her property by 2002. These exhibits also showed that Petree had originally provided the State with an ante litem notice in June 2011, and that this notice was virtually identical to the second ante litem notice she provided in July 2013. The County filed a brief in support of its motion to dismiss, to which it attached 20 pages of exhibits. These exhibits included two plats showing Petree's residential lot, with one of those plats denoting the drainage ditch at the back of Petree's property as a "natural ditch."[1] The second of these plats showed a retention pond located directly behind Petree's property. It appears from the exhibits submitted by both the DOT and the County that this retention pond was filled in by the County sometime between 2006 and 2009. The exhibits also indicated that in November 2005 the DOT had informed Petree that it was not responsible for maintaining the ditch, and indicated that the County had refused to repair, maintain, or otherwise alter the ditch no later than March 2009.

At the time it filed its motion to dismiss, the DOT also filed a motion for a preliminary hearing on the issue of sovereign immunity and requested that it be allowed to present oral testimony on that issue at such a hearing. The trial court

---

[1] Additionally, the exhibits submitted by the County and the DOT included copies of at least some of Petree's correspondence with the County and the DOT, in which Petree referred to the drainage ditch at issue as a "natural ditch."

granted that motion, and on December 17, 2014, issued a rule nisi directing the parties to appear for a January 7, 2015 hearing and advising them that "Defendant [DOT] will present oral testimony at said hearing."

At the outset of the hearing on the motions to dismiss, Petree's lawyer stated on the record that he was aware the DOT would be presenting testimony that was relevant to the threshold issue of sovereign immunity. Counsel further stated that just prior to the hearing, the County's attorney had "handed" him the affidavit of the County engineer and that he believed the County intended to offer the same as evidence at the hearing. Petree's attorney then expressed his concern regarding the presentation of this additional evidence, stating, "we're stretching the boundary between a motion to dismiss and a motion for summary judgment because evidence is being presented but not a whole lot of it." The lawyer continued that if the court intended to consider evidence that addressed issues other than sovereign immunity, he would ask that Petree be allowed additional time to present affidavits. The court responded that it assumed the only testimony being offered would relate "specifically to [the defendants'] motions to dismiss," but that if "something comes out in the hearing that you think you may need some additional time from the court to present,

6

I'll hear from you, and then if it's appropriate . . . I'll allow you that time to present [additional evidence] as well."

The DOT presented the testimony of one of their employees that the only road projects for which it was responsible and that might have affected Petree's property were completed no later than 1998; that the drainage ditch at issue was not constructed as part of any DOT project; and that the employee had no idea how the ditch came to be in existence. When the court questioned the employee regarding the origins of the ditch, it was the County's attorney who responded. The attorney referenced the plat of Petree's property which was attached to the brief the County filed in support of its motion to dismiss and which referred to the ditch as a "natural ditch." The DOT also called Petree to testify and introduced her handwritten notes which detailed her efforts, beginning in 2000, to have the County address the ongoing damage to her property. When the DOT tendered this document into evidence, the court stated to Petree's attorney, "I assume there is no objection as it is something your client wrote." The lawyer responded that he had no objection but "again, if we need to file any additional affidavits or [evidence] subsequent to [the hearing] . . . ." The court responded that it would decide at the end of the hearing whether any such additional evidence was needed.

During his argument to the court, the County's attorney contended that the ditch was a permanent rather than an ongoing nuisance. At that time, the County's attorney offered as additional evidence the restrictive covenants from Petree's subdivision. The attorney used these covenants to support his argument that the County had no legal duty to maintain the ditch, asserting that the covenants "appear[] to put the onus on the property owner" to remedy any problems caused by the presence of the drainage ditch on the property.

Following the presentation of the foregoing evidence and argument, Petree's attorney conceded that in the absence of an expert affidavit, the only negligence claim Petree could assert related to the maintenance of the drainage ditch, and not to the planning, design or construction of the same. The attorney further conceded that he was aware of no action taken by the DOT since 1998 that would have impacted the ditch, and that he was unaware of anything indicating that the State had a duty to maintain the ditch. With respect to the County, however, Petree's lawyer stated that a motion to dismiss was inappropriate, given that Petree had not been allowed to submit evidence. The attorney stated "[w]e believe that we will be able to develop evidence to show that at various times the County has come in and performed some acts which have caused the situation to worsen," and argued that the County could be

liable if it did "something that cause[d] a change" in the ditch that resulted in damage to private property. The lawyer also stated his belief that the evidence would show that the County's decision to fill in the retention pond situated near Petree's property had increased the water flow into the ditch.[2] The attorney concluded that "[a]gain, . . . if . . . we need to present any evidence, affidavits, that sort of thing, we would like to have the opportunity to do that," and he acknowledged his understanding that the court was telling him that his complaint might need to be amended. At the end of the hearing, the trial court indicated to Petree's attorney that it would not be receptive to any additional evidence that might be filed post-hearing.

Approximately three weeks after the hearing, the trial court entered its written order dismissing Petree's complaint. The court dismissed Petree's negligence claims based on its findings that Petree's failure to comply with the expert affidavit requirement of OCGA § 9-11-9.1 meant that she could not state a claim for the negligent plan, design, or construction of the drainage ditch; that the DOT was entitled to sovereign immunity for Petree's claim as to negligent maintenance of the ditch; and that because the ditch was "naturally occurring," Petree could not show

---

[2] During his rebuttal argument, the attorney for the County admitted that the county had filled in a retention pond on land adjacent to Petree's property.

9

that the County had a legal obligation to maintain it. The court dismissed Petree's claims for nuisance and trespass based on its finding that because the drainage ditch was a "natural ditch," any nuisance arising from it was permanent in nature. Given this finding, the trial court concluded that Petree had failed to bring suit against the County and the DOT within the applicable limitation period and that she had failed to provide the DOT with a timely ante litem notice. Petree now appeals from the trial court's order.

1. In her first enumeration of error, Petree asserts that the trial court erred by considering evidence outside the pleadings in deciding the County's motion to dismiss. We agree. The motions to dismiss filed by the DOT and the County differed in that the DOT's motion was based on its assertion of sovereign immunity and on its claims that Petree had failed to provide a timely ante litem notice and had failed to file suit within the limitation period set forth in the GTCA. Thus, the DOT's motion was brought under OCGA § 9-11-12 (b) (1), as it was asserting that the trial court lacked subject matter jurisdiction over Petree's claims against it. *Sadler*, 311 Ga. App. at 603. Given that the DOT's motion to dismiss concerned the court's subject matter jurisdiction, the trial court was entitled to consider the evidence presented at the hearing below to the extent that it "shed light on the trial court's jurisdiction" over

10

Petree's claims against the DOT. *Marietta Properties v. City of Marietta*, 319 Ga. App. 184, 186 (1) (732 SE2d 102) (2012) (citation omitted). See also OCGA § 9-11-43 (b).

Unlike the DOT's motion, the County's motion to dismiss did not concern the court's subject matter jurisdiction. Instead, the County's motion, brought pursuant to OCGA § 9-11-12 (b) (6), sought the dismissal of Petree's complaint on the grounds that it failed to state a claim upon which relief could be granted. Accordingly, in deciding the County's motion, the trial court could not consider anything other than the pleadings themselves. See *Morrell v. Wellstar Health Sys.*, 280 Ga. App. 1, 2 (1) (633 SE2d 68) (2006). Specifically, the trial court could consider only the answer, the complaint, and documents attached to either the answer or the complaint and explicitly incorporated therein by reference. Id. See also *Ezeoke v. Fia Card Svcs., N. A.*, 320 Ga. App. 73, 75 (739 SE2d 81) (2013) (when ruling on a motion to dismiss, the trial court erred in considering documents attached to the complaint but not incorporated therein by reference). When a trial court considers evidence outside the pleadings, including documents attached to and/or offered in support of a defendant's motion to dismiss for failure to state a claim, it converts the motion to dismiss into a motion for summary judgment. *Morrell*, 280 Ga. App. at 2. See also *Babalola*, 324

11

Ga. App. at 751, n. 4. Under such circumstances, the trial court "has the burden of informing the party opposing the motion that it will consider" evidence that was attached to the motion to dismiss or that was submitted at the motion hearing "and that, if the opposing party so desires, the party [may have] no less than 30 days to submit evidence in response to [what is now] a motion for summary judgment." *Carter v. VistaCare, LLC*, 335 Ga. App. 616, 617 (1) (782 SE2d 678) (2016) (citation and punctuation omitted). See also *Cox Enterprises v. Nix*, 273 Ga. 152, 153 (538 SE2d 449) (2000). Here, the trial court did not inform Petree it was converting the County's motion to dismiss into a motion for summary judgment, and in fact it indicated to Petree's attorney that it was not doing so. Moreover, the trial court did not afford Petree an opportunity to respond to the evidence presented at the hearing, and further indicated to Petree's attorney that it would not be receptive to any additional evidence. Thus, as discussed more fully below, the trial court committed reversible error when it relied on evidence outside the pleadings to dismiss Petree's claims against the County.

2. As noted above, Petree's negligence claims against both the DOT and the County were based on her allegations that one or both of the defendants had negligently planned, designed, constructed, and/or maintained the drainage ditch at

12

issue. On appeal, Petree does not challenge the trial court's dismissal of her claims for the allegedly negligent plan, design, or construction of the drainage ditch.[3] Instead, she asserts that the trial court erred in dismissing her claims for ordinary negligence, which were premised on the assertion that the DOT and/or the County had negligently maintained the drainage ditch.

Petree is correct that she was not required to submit an expert affidavit to support any claim for ordinary negligence set forth in her complaint. *Drawdy v. Dept.*

---

[3] Where a complaint seeks damages resulting from professional negligence, OCGA § 9-11-9.1 (a) requires the plaintiff "to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist in the factual basis for each such claim." Among the professions to which this code section applies are professional engineers, OCGA § 9-11-9.1 (g) (21), and therefore the affidavit requirement of OCGA § 9-11-9.1 applies where a plaintiff is seeking damages resulting from the allegedly negligent design or construction of a road. *Lennen v. Dept. of Transp.*, 239 Ga. App. 729, 730 (1) (521 SE2d 885) (1999); *Bray v. Dept. of Transp.*, 324 Ga. App. 315, 318 (3) (750 SE2d 391) (2013). Additionally, under OCGA § 50-21-24 (10), the State is shielded from liability for losses resulting from "[t]he plan or design for construction of or improvement to highways, roads, streets, bridges, or other public works where such plan or design is prepared in substantial compliance with generally accepted engineering or design standards in effect at the time of preparation of the plan or design." Thus, to proceed with a suit against the DOT based upon the negligent planning or design of a roadway, a plaintiff must present "expert testimony or other competent evidence to show that the plan or design [at issue] was not prepared in substantial compliance with generally accepted engineering or design standards at the time such plan was prepared." *Sadler*, 311 Ga. App. at 603-604 (1) (punctuation and footnote omitted). Applying this law, the trial court dismissed Petree's claims for the negligent plan, design, and construction of the drainage ditch.

13

*of Transp.*, 228 Ga. App. 338, 339 (491 SE2d 521) (1997). Nor could the DOT assert a sovereign immunity defense based on OCGA § 50-21-24 (10) to any such claim. *Ga. Dept. of Transp. v. Crooms*, 316 Ga. App. 536, 538 (729 SE2d 660) (2012), overruled in part on other grounds, *Rivera v. Washington*, 298 Ga. 770 (784 SE2d 775) (2016). We therefore examine whether Petree's complaint states a claim against either the County or the DOT for negligent maintenance.

(a) The trial court based its dismissal of Petree's ordinary negligence claim against the County on the evidence showing that the drainage ditch was a "natural ditch." The court appeared to conclude that because the County had not created the ditch, it was not obligated to maintain the ditch, even if the County used the ditch as part of its drainage system. To make this finding, however, the trial court had to rely on evidence beyond the scope of the pleadings. And it appears that the court relied on the following evidence submitted by the County in support of its motion to dismiss: the subdivision plat depicting Petree's residential lot; the restrictive covenants applicable to Petree's subdivision; the statements of the County attorney; and the affidavit of the County engineer. By considering this evidence, the trial court improperly converted the motion to dismiss this claim into a motion for summary judgment, and it did so over Petree's objection and without affording her an

14

opportunity to respond.[4] Accordingly, we reverse the dismissal of Petree's claim for ordinary negligence against the County.

(b) We further find that Petree has waived her right to challenge the trial court's dismissal of her negligent maintenance claim against the DOT. Petree's attorney conceded at the motion to dismiss hearing that he was aware of no facts or law that would indicate that the DOT had a duty to maintain the drainage ditch. Thus, Petree essentially acquiesced to the dismissal of her ordinary negligence claim against the DOT, and having done so, she may not challenge that ruling on appeal. See *Ga. Dept. of Human Resources v. Phillips*, 268 Ga. 316, 320 (2) (486 SE2d 851) (1997) ("[i]t is well established that one cannot complain of a judgment, order, or ruling that her own procedure or conduct procured or aided in causing, nor can she be heard to

---

[4] We note that the trial court's consideration of the evidence at issue was somewhat selective, as it does not appear that the court considered any evidence that could support a claim that the County had a legal duty to maintain the drainage ditch. This evidence included the fact that the subdivision plat showed a drainage easement, but did not indicate to what property (or entity) the easement belonged; that the County at some point acknowledged to Petree that it had an obligation to maintain the ditch, but later changed its position; that the County had performed at least some maintenance on the ditch during the time Petree resided on the property; and that trees had fallen from what appeared to be County property into the ditch, obstructing the flow of water.

15

complain of or question on appeal a judgment which she invokes") (footnote omitted).

3. Petree asserts that the trial court erred in finding that her trespass and nuisance claims arose out of a permanent nuisance, and were therefore barred by the applicable statute of limitations and by her failure to provide the DOT with a timely ante litem notice. We agree with Petree that the trial court erred in relying on the current evidence of record to find that her complaint was based on a permanent nuisance, and we therefore find that the trial court erred in concluding that Petree's claims against the County were not filed within the applicable limitation period. We further find, however, that Petree cannot state a claim for nuisance or trespass against the DOT.

As a general rule, a "[t]respass is a wrongful interference with the right to the exclusive use and benefit of a property right. Nuisance is anything that causes hurt, inconvenience, or damage to another's person or property." *Bishop Eddie Long Ministries v. Dillard*, 272 Ga. App. 894, 901 (3) (613 SE2d 673) (2005) (footnotes omitted). See also OCGA § 51-9-1 (defining trespass); OCGA § 41-1-1 (defining nuisance). Thus, a trespass generally involves a wrongful act that interferes with an owners's right to the exclusive use and enjoyment of his property. *Rinzler v. Folsom*,

16

209 Ga. 549, 552 (2) (74 SE2d 661) (1953). A nuisance, on the other hand, may result from an act that is itself legal, but which nevertheless causes damage to the property of another. Id. See also *J. D. Jewell, Inc. v. Hancock*, 226 Ga. 480, 483 (2) (175 SE2d 847) (1970) ("[t]he distinction between trespass and nuisance consists in the former being a direct infringement of one's right of property, while in the latter the infringement is the result of an act which is not wrongful in itself, but only in the consequences which may flow from it") (citation and punctuation omitted). Depending on the circumstances, "taking an action that diverts excess water onto another's property can constitute a trespass" or a nuisance. *Merlino v. City of Atlanta*, 283 Ga. 186, 190 (3) (657 SE2d 859) (2008) (trespass) (citations omitted); *City of Columbus v. Myszka*, 246 Ga. 571, 571 (1) (272 SE2d 302) (1980) (nuisance).

(a) With respect to Petree's claims against the County, Georgia law provides that where a county[5] creates a trespass upon or creates and/or maintains[6] a nuisance

---

[5] The charter for the Macon-Bibb County consolidated government provides that "[t]he tort and nuisance liability of the restructured government shall follow the law and rules of tort liability applicable to counties in Georgia." 2012 Georgia Laws Act 625, § 2 (j).

[6] The maintenance of a nuisance "is the failure to abate the nuisance after notice by the injured party." *Hoffman v. Atlanta Gas Light Co.*, 206 Ga. App. 727, 731 (2) (426 SE2d 387) (1992).

17

that damages private property to the extent that the damage could be considered a taking of that property, then the county may be held liable for "damages that would be recoverable in an action for inverse condemnation." *Fielder v. Rice Constr. Co.*, 239 Ga. App. 362, 365 (1) (522 SE2d 13) (1999) (citations omitted). See also *Stanfield v. Glynn County*, 280 Ga. 785, 786 (1) (631 SE2d 374) (2006). "Inverse condemnation claims based on trespass or nuisance are subject to a four year statute of limitation." *Liberty County v. Eller*, 327 Ga. App. 770, 772 (2) (761 SE2d 164) (2014) (citations and punctuation omitted). At what point the limitation period begins to run depends on whether the nuisance is considered permanent or continuing in nature. Id. A nuisance is viewed as permanent if it is not abatable, and the "statute of limitation begins to run against such a claim upon the creation of the nuisance once some portion of the harm [it causes] becomes observable." *Oglethorpe Power Corp. v. Forrister*, 289 Ga. 331, 333 (2) (711 SE2d 641) (2011). A nuisance is continuing "if it is one which can and should be abated." Id. (citation and punctuation omitted). "A continuing nuisance . . . does not necessarily mean a constant and unending nuisance or injury, but one which occurs often, and is so necessarily an incident to the use of the property involved, that it can fairly be said to be continuous." *Rinzler*, 209 Ga. at 552-553 (2) (citations omitted). Where a nuisance is continuing, "every

18

continuance of the nuisance is a fresh nuisance for which a fresh action will lie, and the statute of limitation will begin to run at the time of each continuance of the harm." *Oglethorpe*, 289 Ga. at 333 (2) (citation and punctuation omitted).

Here, relying on the evidence showing that the ditch was "naturally occurring," the trial court found that any nuisance associated with the ditch was permanent in nature and that the limitation period had begun to run in 2002.[7] Petree challenges this ruling on appeal, arguing that the trial court impermissibly relied on evidence outside the pleadings to determine the statute of limitation question. Petree further contends that even if the trial court could consider evidence other than the pleadings, that evidence failed to show conclusively that the nuisance was permanent in nature. We agree with both of these arguments.

A statute of limitation defense goes to the merits of the claim, and is therefore subject to a motion to dismiss under OCGA § 9-11-12 (b) (6). *Hight v. Blankenship*, 199 Ga. App. 744, 745 (406 SE2d 241) (1991). Accordingly, for the reasons explained supra in Division 1, the trial court erred when it relied on evidence outside

---

[7] The trial court based its conclusion as to the date on which Petree's cause of action accrued on Petree's handwritten notes, introduced into evidence at the hearing.

19

the pleadings (specifically the County's evidence regarding the fact that the drainage ditch was a "natural ditch") to grant the County's motion to dismiss.

We recognize, however, that the trial court may have been authorized to consider the evidence in question to decide the DOT's claim of sovereign immunity, including the DOT's claim that Petree failed to provide a timely ante litem notice and failed to file suit within the limitation period set forth in the GTCA. Even assuming that the trial court did not err in also considering that evidence with respect to the County's motion to dismiss, this evidence did not support the court's conclusion that Petree's claims were barred by the applicable statute of limitation. Specifically, the fact that the ditch is a naturally occurring feature of the land does not, without more, mean that any nuisance associated with the ditch is permanent in nature.[8] See *Myszka*, 246 Ga. at 571 (1) (reversing a grant of summary judgment to the city on plaintiff's claims for a continuing nuisance, which resulted from a stream and ditch that intersected on plaintiff's property; the evidence showed that both had "become

---

[8] The plat relied upon by the trial court depicts the area in question as a "ditch"; it does not denote a creek or a stream. Thus, while the evidence showed that the ditch itself was not man-made, it did not show that the water flowing through the ditch was a natural occurrence. In other words, the evidence left open the possibility that water flowed in and through the ditch not because it was a naturally occurring waterway, but because water was diverted there, possibly by a storm drain system.

20

enlarged drastically over the years as the volume of water flowing through them [had] increased due to rain water run-off resulting from" the conduct of the city and other defendants). See also *Reid v. Gwinnett County*, 242 Ga. 88, 89 (249 SE2d 559) (1978) (where a county diverts surface water onto the property of another and thereby causes damage to the property, it has created a continuing nuisance); *City Council of Augusta v. Boyd*, 70 Ga. App. 686, 688 (29 SE2d 437) (1944) (flooding from an existing drainage ditch could give rise to a continuing nuisance claim).

Moreover, the nuisance that Petree is complaining of is not the ditch itself. Instead, she is alleging that the County has engaged in conduct that has diverted excess water onto her property and/or impeded the flow of water through the ditch situated on that property. Alternatively, Petree's complaint can be read as asserting that the County has breached a duty to maintain its drainage system and/or the ditch itself. Georgia law is clear that such allegations are sufficient to state a claim for a continuing nuisance. See *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996) ("where a municipality negligently constructs or undertakes to maintain a sewage or drainage system which causes the repeated flooding of property, a continuing, abatable nuisance is established") (citations omitted); *Myszka*, 246 Ga. at 571 (1) (evidence showing that city's diversion of excess water into a ditch and

21

stream on plaintiff's property caused flooding thereon supported plaintiff's claim for continuing nuisance); *Liberty County*, 327 Ga. App. at 773 (2) ("[l]andowners may show a continuing nuisance through evidence that an existing condition, such as a culvert or drainpipe, was improperly maintained") (citations omitted).

(b) With respect to Petree's claims against the DOT, counsel for Petree conceded at the hearing on the motion to dismiss that he was aware of no action taken by the DOT at any time after 1998 that would have impacted the flow of water into or through the ditch. Instead, counsel stated his belief that it was the County's conduct that had caused the increased water flow to the ditch and the resulting damage to Petree's property. Petree's attorney further acknowledged that he did not have any basis for arguing that Petree could maintain a claim against the State, and that he had previously discussed with his client that it was "very likely" that the DOT would be dismissed from the lawsuit. In light of these concessions, we find that Petree cannot state a claim against the State for trespass or nuisance. We therefore affirm the dismissal of those claims against the DOT. Accordingly, we need not address Petree's assertion that the trial court erred in finding that she had failed to provide the DOT with the timely ante litem notice or that she failed to file suit within the limitation period set forth in the GTCA.

22

For the reasons set forth above, we affirm the trial court's dismissal of Petree's claims against the DOT. We also affirm the trial court's dismissal of any claims against the County for negligence in the planning, design, or construction of the drainage ditch. We reverse the dismissal of Petree's claims against the County for ordinary negligence, trespass, and nuisance. The case is remanded for further proceedings consistent with this opinion.

*Judgment affirmed in part and reversed in part, and case remanded. Mercier, J., concurs. Ellington, P. J., concurs in judgment only.*