**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS
COURT. ALL FILINGS MUST BE SUBMITTED WITHIN
THE TIMES SET BY OUR COURT RULES.*

June 30, 2021

# In the Court of Appeals of Georgia

A21A0488, A21A0489. CITY OF ALPHARETTA v. VLASS; and
    vice versa.

PIPKIN, Judge.

Plaintiff Bill Vlass brought negligence and nuisance claims against the City of Alpharetta (the "City") seeking to recover for injuries he received in a motor vehicle collision. The City moved to dismiss Vlass' claims based on, inter alia, municipal immunity; the trial court granted the motion as to Vlass' negligence claim but denied the motion as to the nuisance claim.

As set out in the complaint, as amended, on February 15, 2018, Vlass was driving a school bus northbound on Georgia State Route 9 when a pick-up truck driven by Charles Wayne Patrick turned left from Devore Road onto State Route 9 into the path of the school bus, causing a "t-bone" collision. Vlass brought a

negligence action against the City,[1] claiming that the City was negligent because it failed to prohibit left-hand turns onto State Route 9 from Devore Road despite actual and/or constructive knowledge of the hazardous condition this created. The City filed a motion to dismiss, and Vlass amended his complaint to state a nuisance claim on this same basis; the City then filed a motion to dismiss both claims based on, inter alia, municipal immunity. On April 8, 2020, the trial court entered an order denying the City's motion to dismiss the nuisance claim but granted the motion as to the negligence claim based on a finding that Vlass had failed to prove the City had waived its immunity by purchasing insurance. The City filed an application for interlocutory appeal, which we granted, and that appeal was docketed in this Court as Case No. A21A0488 ("the nuisance appeal"). Vlass filed a cross appeal from the dismissal of his negligence claim and that appeal has been docketed in this Court as Case No. A21A0489 ("the negligence appeal"). As set forth below, we now reverse in the nuisance appeal and affirm in the negligence appeal.

We first set out the general framework for governmental immunity afforded to municipalities. "Though originating in the common law, the doctrine of municipal

---

[1] Vlass also sued Patrick, but the parties settled that claim, and Vlass' complaint was dismissed.

2

immunity now enjoys constitutional status [pursuant to Article IX, Section II, Paragraph IX of the Georgia Constitution]." *Gatto v. City of Statesboro*, 2021 GA. LEXIS 488 at \*5 (1) (Case No. S20G0651, decided June 21, 2021). *Mayor & Alderman of the City of Savannah v. Herrera*, 343 Ga. App. 424, 427 (1) (808 SE2d 416) (2017); see also *CSX Transp., Inc. v. City of Garden City*, 277 Ga. 248, 249 (1) (588 SE2d 688 (2003). That immunity, which under the current version of our constitution may be waived only by the General Assembly, *Gatto*, 2021 GA. LEXIS 488 at \*5 (1), is codified in OCGA § 36-33-1, which also sets out two narrow waivers. Pursuant to subsection (a) "[a] municipal corporation shall not waive its immunity by the purchase of liability insurance . . . unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the limits of such insurance policy." Subsection (b) carves out another narrow waiver: "[m]unicipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers. For neglect to perform or improper or unskillful performance of their ministerial duties, they shall be liable." OCGA § 36-33-1 (b). This latter waiver "has been consistently '[i]nterpreted to mean that municipal corporations are immune from liability for acts taken in performance of a governmental function but may be liable for negligent

3

performance of their ministerial duties.' *City of Atlanta v. Mitcham*, 296 Ga. 576, 577-578 (1) (769 SE2d 320) (2015)." *Gatto v. City of Statesboro*, 353 Ga. App. 178, 181-182 (1) (834 SE2d 623) (2019). Lastly, and importantly, municipal immunity is not in the nature of an affirmative defense but rather speaks to the trial court's subject matter jurisdiction. *City of Tybee Island v. Harrod*, 337 Ga. App. 523, 524 (788 SE2d 122) (2016). Thus, the burden is on the plaintiff to establish a waiver of immunity. Id.

*CASE NO. A21A0488.*

1. With this general framework in mind, we turn first to the trial court's denial of the City's motion to dismiss Vlass' nuisance claim. In *Gatto*, 2021 GA. LEXIS 488, our Supreme Court recently set out the "contours" of municipal immunity in cases involving a nuisance claim. Id. at *1. After first tracing the history of municipal immunity, the Court observed "[e]ven in the exercise of its governmental functions, a municipality does not enjoy immunity for *all* liability." Id. at *7 (2). The Court went on to explain,

> although protected from liability from negligence actions, a municipality, like any other individual or private corporation, may be liable for damages it causes to a thirty party from *the operation or maintenance of a nuisance*, irrespective of whether it is exercising a

4

governmental or ministerial function. This exception to sovereign immunity is based on the principle that a municipal corporation can not, under the guise of performing a governmental function, create a nuisance dangerous to life and health or take or damage private property for public purpose, without just and adequate compensation being first paid.

(Punctuation and indention omitted.) Id., quoting *City of Thomasville v. Shank,* 263 Ga. 624, 624-625 (1) (437 SE2d 306) (1993). As the Court further explained,

> though denominated an 'exception,' to sovereign immunity in *Shank* and some other cases, the principle that municipalities may be liable for creating or maintaining a nuisance is actually not an exception at all, but instead, a proper recognition that the Constitution itself requires just compensation for takings and cannot, therefore, be understood to afford immunity for such conduct.' *Georgia Dept. of Nat. Resources v. Center for a Sustainable Coast, Inc.*, 294 Ga. 593, 600 (2) (755 SE2d 184) (2014).

*Gatto*, 2021 GA. LEXIS 488 at *7-8 (2). The Court reasoned that, viewed in this light, "the moniker 'nuisance exception' is a misnomer, and it is more apt to refer to the 'nuisance doctrine' when evaluating whether municipal liability may be imposed in a given case." Id.

The Court next turned to the application of the nuisance doctrine, recognizing, as it had before, "the challenge is determining what conduct or act on the part of the municipality will result in the creation or maintenance of a nuisance, as opposed to an action in negligence." (Punctuation omitted.) Id. at *8, quoting *Hibbs v. City of Riverdale*, 267 Ga. 337, 338 (478 SE2d 121) (1996). Not surprisingly, given that the roots of the nuisance doctrine extend squarely into the Takings Clause of our State Constitution, the court went on to note that "[t]raditionally, a municipality's liability in nuisance was limited to situations where the alleged injury related to the physical condition of the plaintiff's property or the plaintiff's use and enjoyment thereof[,]" *Gatto*, 2021 GA LEXIS 488 at *10 (2), the classic example being that of damage to personal property caused by the construction or maintenance of water or sewer systems or other types of physical structures. Id. at *9-10 (2).

However, "[t]his limitation on the nuisance doctrine was . . . apparently abandoned in the case of *Town of Fort Oglethorpe v. Phillips*, 224 Ga. 834 (165 SE2d 141) (1968)," Id. at *11 (2), when our Supreme Court allowed a nuisance claim against a municipality based on the failure to repair a malfunctioning traffic light, thereby "extending the nuisance doctrine to include personal injuries beyond those tied to plaintiff's property." (Citation and punctuation omitted.) Id. But this expansion

6

to include claims for personal injuries not tied to a plaintiff's property did not remain unbounded; rather "[s]ince *Phillips*, th[e] Court has attempted to elucidate parameters for this more expansive notion of municipal liability." *Gatto*, 2021 GA LEXIS 488 at *12 (2). Thus, in *Mayor of Savannah v. Palmerio*, 242 Ga. 419 (249 SE2d 224) (1978), the Court, in connection with jury instructions, set out the following "propositions":

> To be held liable for maintenance of a nuisance, the municipality must be chargeable with performing a continuous or regularly repetitious act, or creating a continuous or regularly repetitious condition, which causes the hurt, inconvenience or injury; the municipality must have knowledge or be chargeable with notice of the dangerous condition; and if the municipality did not perform an act creating the dangerous condition . . . the failure of the municipality to rectify the dangerous condition must be in violation of a duty to act.

Id. at 425 and 427 (3).

In setting out these "propositions," our Supreme Court cited cases from this Court in which we distinguished allegations of nuisance premised on the municipalities actions, such as installing and then failing to maintain a defective traffic device as was the situation in *Phillips*, from situations where the nuisance claim was premised on "a classic case of non-action by the city, [such as where] there

7

was no traffic light in place and the question is whether an alleged hazardous condition brought about by the absence of a traffic light constituted the maintenance of a nuisance." *Hancock v. City of Dalton*, 131 Ga. App. 178, 180-181 (205 SE2d 470) (1974). In this latter situation, we explained, in the absence of a statute or ordinance requiring the city to act, the dismissal of the nuisance action against the city was proper. Id. at 181. We followed this line of reasoning in *Bowen v. Little*, 139 Ga. App. 176 (228 SE2d 159) (1976) to affirm the dismissal of the city from an action alleging nuisance based on the city's failure to install a traffic light at an allegedly dangerous intersection. Our Supreme Court countenanced our approach in *Tamas v. Columbus*, 244 Ga. 200 (259 SE2d 457) (1979), noting "a clear line . . . between a discretionary nonfeasance and the negligent maintenance of something erected by the city in its discretion in such manner as to create a dangerous nuisance[.]" Id. at 202, quoting *Bowen*, 139 Ga. App. at 177.

It seems to us, therefore, that the present case – in which the claim is that the City "permitted the existence and maintenance of a nuisance" by failing to prohibit left turns at the intersection where Vlass was injured – falls squarely within the line of cases in which our appellate courts have refused to further extend the expansion of *Phillips.* However, in denying the City's motion to dismiss, the trial court in this

8

case found the facts here to be akin to those of *Riggins v. City of St. Marys*, 264 Ga. App. 95 (589 SE2d 691) (2003), in which a city was alleged to have created a nuisance by failing to replace a blinking caution light with an actual traffic control signal. However, there are several reasons that *Riggins* is not controlling here. First and foremost, *Riggins* did not address the city's waiver of immunity under the nuisance doctrine; rather, with respect to plaintiff's nuisance claim, our analysis focused solely on the question of causation. Id. at 97-100 (1). It is a basic tenet of appellate law that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Wolfe v. Bd. of Regents of the Univ. System of Ga.*, 300 Ga. 223, 231 (2) (d) (794 SE2d 85) (2016). Moreover, the nuisance claim in *Riggins* was not, as the trial court in this case concluded, factually akin to Vlass' nuisance claim here; in *Riggins* the city had taken a direct action at the intersection by installing a blinking light, after which accidents apparently increased by 70 percent, a fact that was known to the city. Id. at 96. Thus, it can fairly be said that the city had, by its direct actions, created a nuisance in *Riggins* and the issue was how to remedy it – which plaintiff suggested could be accomplished by the installation of a control signal. Here, in contrast, Vlass does not allege that the City had taken an

9

action that created a nuisance at the intersection; rather, he alleges that the City permitted a nuisance to exist by failing to act to prohibit left turns but he does not say that the City had previously taken any action or asserted control of the intersection such that it had created a dangerous condition. Accordingly, and based on the prior precedent on this issue that appears to remain good law, the trial court erred by denying the City's motion to dismiss Vlass' nuisance claim.

*CASE NO. A21A0489.*

2. In his cross appeal, Vlass argues that the trial court erred by dismissing his negligence claim. Vlass acknowledges that the decision whether to prohibit left turns at the intersection was a discretionary act, see *Riggins*, 264 Ga. App. at 101 (2), entitling the City to immunity from his negligence claim, see OCGA § 36-33-1 (b), but argues the trial court erred by finding that the City had not waived its immunity by purchasing a liability insurance policy. See OCGA § 36-33-1 (a). However, Vlass has forfeited his right to establish that the City waived its municipal immunity with respect to his negligence claim by purchasing insurance.

To establish a waiver of governmental immunity under OCGA § 36-33-1 (a), the plaintiff must show not only the existence of insurance, but also that "the facts underlying [the plaintiff's] cause of action f[a]ll within the scope of coverage of the

10

. . . policy." *City of Tybee Island v. Harrod*, 337 Ga. App. 523, 524 (788 SE2d 122) (2016). In other words, a plaintiff must show the policy actually provides coverage for the claim at issue. See *Gatto*, 353 Ga. App. at 184 (2); see also *Owens v. City of Greenville*, 290 Ga. 557, 559 (3) (a) (722 SE2d 755) (2012) (analyzing policy to determine if coverage is provided for the claims at issue). Thus, it is not enough that a plaintiff show the existence of a liability policy; the plaintiff must also show that the claims at issue are covered claims and that they are not otherwise excluded from the policy's coverage. See *CSX Transp.*, 277 Ga. at 250 (2) ("if the facts behind [plaintiff's] cause of action against the City fall within the scope of coverage provided by the . . . policy and sovereign immunity would otherwise apply to that cause of action, the City's sovereign immunity is waived to the extent of such liability coverage.").

Pertinent to this issue, the record shows that in his response to the City's motion to dismiss, Vlass noted in a footnote that he should be allowed to conduct discovery to ascertain whether the City may have purchased liability insurance that would cover his claims. Subsequently, in response to Vlass' discovery requests, the

11

City revealed the existence of a policy of liability insurance;[2] the City then filed a supplemental motion to dismiss, attaching the insurance policy in question. The City argued – making specific reference to the language of the policy and case law – that the policy at issue did not provide coverage for any claim which would otherwise be barred by sovereign immunity such as the negligence claim asserted by Vlass in this case.

On March 17, 2020, Vlass filed a response to the City's supplemental motion, asserting that the trial court should not consider the policy the City attached to its motion because it was not properly authenticated or certified. Vlass also made a bare bones argument – consisting of a statement that the cases cited by the City were inapposite and citing, without elaboration or any analysis, a non-binding case from the North Carolina Court of Appeals for the proposition that the language in the City's policy of insurance waived sovereign immunity. The City responded the next

[2] Vlass initially argued that the issue of coverage should not be determined on a motion to dismiss but later abandoned that stance. We note that a trial court may hear evidence and make relevant fact-findings on the threshold issue of subject matter jurisdiction when dealing with a motion to dismiss under OCGA § 9-11-12 (b) (1) such as the one filed in this case. *Rivera v. Washington*, 298 Ga. 770, 777 (784 SE2d 775) (2016).

day, pointing out, among other things,[3] that Vlass had the burden to prove the City waived its sovereign immunity by the purchase of insurance – a burden which he could not meet by merely pointing to the existence of insurance – and that it was his burden, not the City's, to produce a certified copy of the policy and to show that coverage existed for his claim under the terms of the policy. Vlass did not reply and on April 6, 2020, the City filed a certified copy of the insurance policy at issue. Two days later the trial court issued its order in this case, finding, as to Vlass' negligence claim, that he had failed to establish the City had waived its immunity by purchasing insurance. The trial court specifically noted that Vlass had merely identified that a policy existed but that he had not submitted a copy of the insurance policy or elaborated on its terms; the trial court also stated in a footnote that it had not considered the policy produced by the City.

Vlass does not directly challenge the trial court's failure to consider the certified copy of the insurance policy filed by the City two days before the trial court issued its order in this case, merely taking note of that fact in his initial brief to this

---

[3] The City also argued that the North Carolina Court of Appeals case cited by Vlass in his response was contrary to both Georgia law and cases decided by several North Carolina federal district courts.

Court,[4] and he does not directly challenge the trial court's determination that his efforts before the trial court were insufficient to meet his burden of proving coverage under the policy; instead, he now argues, for the first time on appeal, that the policy language at issue is ambiguous and must be construed in favor of coverage, asking us to decide as an initial matter whether the policy provides coverage for his claim.

However, this Court is a court for the correction of error raised and ruled on below, and this issue was never ruled on by the trial court because (1) Vlass argued that the trial court should not consider the uncertified copy of the policy provided by the City, and (2) he made no meaningful argument to support a conclusion that the policy provided coverage for his claim, although the City had specifically argued that it did not. Further, in the ensuing weeks between when the City raised Vlass' failure to meet his burden of proving coverage for his claim and the issuance of the trial court's order, Vlass never attempted to supplement his response to address that issue, he did not bring it to the attention of the trial court when the City filed a certified

[4] In his reply brief, Vlass cites a case for the proposition that a party with the burden of proof may rely on evidence introduced by the other party to meet that burden, but the case cited by Vlass has to do with proving standing in a criminal case and is inapposite here. See *Bourassa v. State*, 306 Ga. 329, 335-336 (830 SE2d 189) (2019). That said, we certainly make no holding concerning whether the party with the burden of proof must produce the evidence to meet that burden in the context of this or any other case.

copy of the policy, and he never otherwise indicated to the trial court that he was retreating from his previous position and the trial court should now consider the certified policy filed by the City. Thus, the trial court in this case did exactly what Vlass asked the court to do by not considering the policy filed by the City, and Vlass never took advantage of the opportunity to present additional argument to the trial court to meet his burden to prove the existence of coverage for his claim. "A party will not be heard to complain of error induced by his own conduct, nor to complain of error expressly invited by [him]. . . . He must stand or fall upon the position taken in the trial court." (Citation and punctuation omitted.) *Mary Allen Realty & Mgmt., LLC v. Harris*, 354 Ga. App. 858, 862 (1) (841 SE2d 748) (2020). See also *Carnett's, Inc. v. Hammond*, 279 Ga. 125, 130 (6) (610 SE2d 529) (2005) ("A party cannot complain of a judgment, order, or ruling that his own conduct produced or aided in causing.") (citation and punctuation omitted); *Petree v. Ga. Dept. of Transp.*, 340 Ga. App. 694, 701-702 (2) (b) (798 SE2d 482) (2017) ("[I]t is well established that one cannot complain of a judgment, order, or ruling that h[is] own procedure or conduct procured or aided in causing, . . .") (citation and punctuation omitted). Any alleged error by the trial court in finding that Vlass did not carry his burden to prove a waiver of municipal immunity by the purchase of insurance was due to Vlass' own conduct,

and he cannot now be heard to complain about a result that his own conduct brought about. *Gateway Financial Svcs., LLC v. Norrils*, 345 Ga. App. 775, 777 (b) (815 SE2d 126) (2018). Accordingly, the trial court's dismissal of Vlass' negligence claim is affirmed.

*Judgment affirmed in Case No. A21A0489. Judgment reversed in Case No A21A0488. Miller, P. J., and Hodges, J., concur*.